**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. ROBERT H. BRAVER, for himself and all individuals similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| 1. NORTHSTAR ALARM SERVICES, LLC, a Utah Limited Liability Company, | ) ) ) | |
| 2. DOE D/B/A YODEL TECHNOLOGIES, an unknown individual(s) or other entity, and | ) ) | |
| 3. DOES 2-10, UNKNOWN INDIVIDUALS, | ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

**COMES NOW** the Plaintiff, Robert H. Braver ("Braver"), and for his cause of action, and further on behalf of all other similarly situated individuals, against Northstar Alarm Services, LLC ("Northstar") and Doe d/b/a Yodel Technologies ("Yodel"), (collectively, "Defendants"), alleges and states as follows:

### INTRODUCTION

1.     Braver brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012).

2.     In violation of the TCPA, Northstar hired a third-party, Yodel, who commissioned telemarketing calls to Mr. Braver's telephone number for the purposes of

advertising their goods and services using a prerecorded message without express consent which is prohibited by the TCPA.

3.    Braver never consented to receive the calls.    Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal pre-recorded telemarketing calls from or on behalf of the Defendants.

4.    A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5.    This is an action for injunctive relief, statutory damages, and actual damages based on these unlawful prerecorded message telemarketing calls (commonly referred to as "robocalls") in violation of the federal TCPA.

## THE PARTIES

6.    Braver is an individual residing in Norman, Cleveland County, Oklahoma, within the Western District of Oklahoma.

7.    Northstar Alarm Services, LLC is a Utah Limited Liability Company, registered with the Oklahoma Secretary of State to do business in the State of Oklahoma, with its primary place of business in Orem, Utah.

8.    Doe d/b/a Yodel Technologies is a presently unknown individual, unincorporated association of individuals, or other entity with its primary place of business in Palm Harbor, Florida.

9.    Does 2-10 refer to presently unknown persons or entities who personally performed, directed, authorized, and/or failed to halt the unlawful acts described herein, and therefore may also be liable under the TCPA and/or OCPA.

## JURISDICTION AND VENUE

10.    The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC,* 565 U.S. 368 (2012).

11.    The events described herein relate to unlawful telemarketing calls to Braver's telephone and to a telephone number (405-360-7462) which has continuously been publicly listed in his name for approximately forty (40) years with a Norman, Oklahoma address.

12.    Venue is appropriate in this district pursuant to 47 U.S.C. § 227(b)(3) as Defendants have engaged in business activities in and/or directed to this District within the State of Oklahoma and have purposefully availed themselves of the opportunity to conduct commercial activities in this forum.

## THE TELEPHONE CONSUMER PROTECTION ACT

13.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.    In so doing, Congress recognized that "[u]nrestricted

telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer

Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

14.    The TCPA makes it unlawful to make any telemarketing call using an

artificial or prerecorded voice to any residential telephone line or cellular telephone line

without express written consent.  *See* 47 U.S.C. § 227(b)(1)(A)(iii) and (B).  The TCPA

provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

§ 227(b)(1)(A) or (B).  *See* 47 U.S.C. § 227(b)(3).

15.    According to findings by the Federal Communication Commission

("FCC"), the agency Congress vested with authority to issue regulations implementing

the TCPA, such calls are prohibited because, as Congress found, automated or

prerecorded telephone calls are a greater nuisance and invasion of privacy than live

solicitation calls, and such calls can be costly and inconvenient.

16.    In 2013, the FCC required prior express written consent for all prerecorded

telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically,

it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be
> signed and be sufficient to show that the consumer:  (1) received "clear and
> conspicuous disclosure" of the consequences of providing the requested
> consent, i.e., that the consumer will receive future calls that deliver
> prerecorded messages by or on behalf of a specific seller; and (2) having
> received this information, agrees unambiguously to receive such calls at a
> telephone number the consumer designates.[] In addition, the written
> agreement must be obtained "without requiring, directly or indirectly, that
> the agreement be executed as a condition of purchasing any good or
> service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## DEFENDANTS' UNLAWFUL CONDUCT

17.     Plaintiff restates the above and foregoing as though fully restated herein.

18.     On August 26, 2016 at approximately 10:17 AM, Braver received a prerecorded message telemarketing "robocall" advertising the commercial availability of burglar alarm equipment and alarm monitoring services.

19.     No company name was transmitted via Caller ID.

20.     At the outset of the call, the company was identified as, "The Local Department of Home Security" and then later as "The Security Help Center".  No such company name is registered as a corporation, LLC, or trade name or licensed as an alarm company within the State of Oklahoma.

21.     At no time during this call was an address or telephone number of the calling party verbally provided to Braver.

22.     On August 26, 2016 at approximately 4:23 PM, Braver received another prerecorded message telemarketing robocall relating back to the prior call which did not result in Braver's conversation with a live agent to discuss the purchase of an alarm system and monitoring service.

23.     The company was again identified as "The Security Help Center."

24.     The Caller ID number transmitted was "405-144-8814" which is an impossible telephone number under the North American Numbering Plan.

25.     No Caller ID Name was transmitted.

26.     For the sole purpose of identifying the source of the anonymous prerecorded message calls, Braver investigated by feigning interest in an alarm system. Braver was then transferred to a representative of NorthStar.

27.     Once Northstar was identified, Braver was able to contact Northstar in order to gather additional information related to the calls.

28.     Prior to determining that any legal action would be warranted, Braver notified Northstar of his concerns about the unlawful nature of the calls under the TCPA but Braver's concerns were largely dismissed by Northstar.

29.     Northstar indicated that the calls were initiated by Yodel Technologies of Palm Harbor, Florida, and that Northstar had vetted Yodel Technologies and was fully aware that Yodel was initiating telemarketing calls to consumers using prerecorded voice messages.

30.     In response to Braver's letter expressing concern, Northstar claimed that "Home Security Help Center" was registered as a "calling name" with the State of Nevada.

31.     The business name "Home Security Help Center" was never mentioned in the course of the calls alleged herein.

32.     Braver diligently searched the official records of the states of Oklahoma, Nevada, and Florida, and was unable to locate a corporation, LLC, fictitious business name, or trade name of "Home Security Help Center", "The Security Help Center", "The Local Department of Home Security", or anything similar.

6

33.     Braver was able to locate a web site, "yodelvoice.com", which listed a non-existent address ("123 A Street") in Palm Harbor, Florida, but Braver diligently searched Florida's official records for corporations, LLCs, and fictitious trade names, and was unable to locate any entry for "Yodel Technologies" or anything similar.

34.     At no time did Braver provide express written permission to Northstar, or anyone else, to initiate prerecorded message telephone solicitations to him.

35.     Prior to Braver's investigation of the telemarketing calls to his telephone number, Braver had never heard of Northstar.

## NORTHSTAR'S LIABILITY AND ITS ARRANGEMENT WITH YODEL

36.     The Federal Communication Commission has instructed that sellers such as Northstar may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

37.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.*

(specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

38.    In fact, for more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

39.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

40.    The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

41.    The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

42.    The May 2013 FCC Ruling further clarifies the circumstances under which

a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows
> the outside sales entity access to information and systems that normally
> would be within the seller's exclusive control, including: access to detailed
> information regarding the nature and pricing of the seller's products and
> services or to the seller's customer information. The ability by the outside
> sales entity to enter consumer information into the seller's sales or
> customer systems, as well as the authority to use the seller's trade name,
> trademark and service mark may also be relevant. It may also be
> persuasive that the seller approved, wrote or reviewed the outside entity's
> telemarketing scripts.  Finally, a seller would be responsible under the
> TCPA for the unauthorized conduct of a third-party telemarketer that is
> otherwise authorized to market on the seller's behalf if the seller knew (or
> reasonably should have known) that the telemarketer was violating the
> TCPA on the seller's behalf and the seller failed to take effective steps
> within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

## CLASS ALLEGATIONS

43.    As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff

brings this action on behalf of a class of all other persons or entities similarly situated

throughout the United States.

44.    The classes of persons Plaintiff proposes to represent are tentatively defined

as:

All persons within the United States: (a) Defendant and/or a third party acting on

their behalf, made one or more non-emergency telephone calls; (b) promoting

Defendant's products or services; (c) to the class' cellular or residential telephone

numbers; (d) using an artificial or prerecorded voice; (e) without prior express consent;

and (f) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

45.    Upon information and belief, the members of the class received one or more prerecorded telemarketing messages without having given prior express consent.

46.    Upon information and belief, the members of the class received one or more telemarketing calls that were initiated without transmitting the caller's name and/or without transmitting a valid telephone number

47.    The class as defined above is identifiable through phone records and phone number databases.

48.    The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

49.    Plaintiff is a member of the proposed class.

50.    There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

Whether Defendants violated the TCPA by using prerecorded or artificial voice to call the proposed class members without their express consent;

Whether Northstar is vicariously liable for the conduct of Yodel;

Whether calls to the class were initiated without transmitting the caller's name and/or without transmitting a valid telephone number

Whether the Plaintiff and the class members are entitled to statutory damages and/or injunctive relief because of Defendants' actions.

51.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

52.     Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions.

53.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

54.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

55.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

56.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## COUNT I

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), RESTRICTIONS ON USE OF AUTOMATED TELEPHONE EQUIPMENT, 47 U.S.C. § 227(b):

## INITIATING PRERECORDED MESSAGE TELEMARKETING CALLS

57.     Braver and the class restate and re-allege the proceeding paragraphs as if fully set forth herein.

58.     Defendants' robocalls described herein delivered a prerecorded telemarketing message without Braver or the class' prior express written consent, and therefore constitute violations of 47 CFR § 64.1200(a)(3) as promulgated under 47 USC § 227(b) for each such call.

59.     Defendants' robocalls invaded Braver's and the class' privacy, violated Braver's and the class' legal rights under federal law to not be subjected to such unlawful and anonymous robocalls, interrupted the tranquility of Braver's and the class' home, and required Braver to take time and affirmative steps to identify the calling party in an attempt to curtail these unlawful calls.

60.    Braver and the class are entitled as a matter of law to obtain an injunction prohibiting Defendants from committing further violations of 47 CFR § 64.1200(a)(3) and the recovery of the greater of actual damages or $500.00 for each of the violations as prescribed under 47 USC § 227(b)(3).

61.    The robocalls to Braver's and the class' telephone numbers, and the acts and omissions as to those calls described herein were deliberate and conscious acts or omissions.

62.    The robocalls to Braver's telephone number and to the class were willful or knowing as those terms are defined in the Communications Act of 1934 and administered by the FCC.  Therefore it is within the Court's discretion to award Braver and the class up to three times the available statutory damages as prescribed under  47 USC § 227(b)(3).

## COUNT II

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), PROTECTION OF SUBSCRIBER PRIVACY RIGHTS, 47 U.S.C. § 227(c): BLOCKING OR FAILURE TO TRANSMIT ACCURATE CALLER ID

63.    Braver and the class re-state and re-allege the previous paragraphs as if fully set forth herein.

64.    Defendants' robocalls described herein were initiated without transmitting the caller's name and/or without transmitting a valid telephone number, and therefore constitute of 47 CFR 64.1601(e) as promulgated under 47 USC § 227(c).

65.     Failure to transmit valid Caller ID numbers and/or company name required Braver to expend time and effort to play along as a potential customer in order to identify the parties responsible for the unlawful calls to Braver and the class.

66.     Braver and the class are entitled as a matter of law to obtain an injunction prohibiting Defendants from committing further violations of 47 CFR § 64.1601(e) and the recovery of the greater of actual damages or $500.00 for each violation as prescribed under 47 USC § 227(c)(5).

67.     The robocalls with invalid and/or incomplete Caller ID, and the acts and omissions as to those calls described herein were deliberate and conscious acts or omissions.

68.     The robocalls with invalid and/or incomplete Caller ID were willful or knowing as those terms are defined in the Communications Act of 1934 and administered by the FCC.  Therefore it is within the Court's discretion to award Braver and the class up to three times the available statutory damages as prescribed under  47 USC § 227(c)(5).

## COUNT III

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), PROTECTION OF SUBSCRIBER PRIVACY RIGHTS, 47 U.S.C. § 227(c):

### INITIATING A CALL FOR TELEMARKETING PURPOSES WITHOUT AN EFFECTIVE WRITTEN POLICY MEETING MINIMUM STANDARDS

69.     Braver and the class re-state and re-allege the previous paragraphs as if fully set forth herein.

70.    No verbal identifications of any kind at the outset of the prerecorded messages were provided including failing to provide an actual legitimate company name and an address or telephone number.

71.    Failure to provide the company name required Braver to expend time and effort to play along as a potential customer in order to identify the parties responsible for the unlawful and indeed criminal calls to Braver's residence.

72.    The robocalls were initiated for *telemarketing* purposes as that term is defined at 47 CFR § 64.1200(f)(12).

73.    The identification disclosures including company name and a mailing address or telephone number are among the minimum standards enumerated under 47 CFR § 64.1200(d).

74.    The robocalls were initiated without Defendants having first implemented an effective written policy meeting the required minimum standards, and therefore constitute two (2) violations of 47 CFR § 64.1200(d) as promulgated under 47 USC §227(c).

75.    Braver and the class are entitled as a matter of law to obtain an injunction prohibiting Defendants from committing further violations of 47 CFR § 64.1200(d), and the recovery of the greater of actual damages or $500.00 for each of the two (2) violations enumerated in Paragraph 29, as prescribed under 47 USC § 227(c)(5).

76.    Defendants' failures to comply with 47 CFR § 64.1200(d) were willful or knowing as those terms are defined in the Communications Act of 1934 and administered

by the FCC.  Therefore it is within the Court's discretion to award Braver and the class up to three times the available statutory damages as prescribed under **§ 227(c)(5)(B)**.

**WHEREFORE**, Braver and the class pray for judgment against Defendants after trial by jury as follows:

1.    A permanent injunction enjoining Defendants from initiating any further telemarketing calls to any telephone number assigned to a residential telephone subscriber until:

    a.  Defendants have devised a written policy meeting the minimum standards enumerated under 47 § 64.1200(d),

    b.  Defendants have trained their personnel in said policy,

    c.  Defendants have effectively implemented said policy,

    d.  Defendants transmit full Caller ID information that includes Northstar's name (or the legal name of the telemarketing company initiating calls on Northstar's behalf); and,

    e.  Defendants transmit full, valid Caller ID information that includes a telephone number that is answered during normal business hours and which permits a consumer to make a do-not-call request.

2.    A permanent injunction enjoining Defendants from initiating prerecorded message calls for telemarketing purposes to any residential telephone subscriber without the called party's prior express permission.

3.    Statutory damages under the TCPA in the amount of $500.00 per violation to be trebled for willful violation of the statute;

4.      Court costs;

5.      Attorneys' fees; and,

6.      Such other relief as may be deemed appropriate by the Court.


                            Respectfully submitted,

                            **HUMPHREYS WALLACE HUMPHREYS, P.C.**


                     By:   /s/ Paul Catalano
                           David Humphreys, OBA #12346
                           Luke Wallace, OBA #16070
                           Heather Munzuris, OBA #16964
                           Paul Catalano, OBA #22097
                           9202 S. Toledo Avenue
                           Tulsa, OK  74137
                           (918) 747-5300 / (918) 747-5311 (Fax)
                           david@hwh-law.com
                           luke@hwh-law.com
                           heather@hwh-law.com
                           paul@hwh-law.com
                           **ATTORNEYS FOR PLAINTIFF**


**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**