# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT H. BRAVER, for himself and all individuals similarly situated, | § § § | |
| PLAINTIFF, | § § | |
| v. | § § | CASE NO. 5:17-cv-00383-F |
| NORTHSTAR ALARM SERVICES, LLC, ET AL. | § § § | |
| DEFENDANTS. | § § | |

---

## DEFENDANT NORTHSTAR ALARM SERVICES, LLC'S
## MOTION FOR JUDGMENT ON THE PLEADINGS
## AND INCORPORATED BRIEF IN SUPPORT

---

Jesse R. Pierce
  Oklahoma Bar No. 22827
    jpierce@pierceoneill.com
Nugent D. Beaty, Jr.
  Texas Bar No. 24064872
    dbeaty@pierceoneill.com
PIERCE & O'NEILL, LLP
4203 Montrose Blvd.
Houston, Texas 77006
(713) 634-3600 Main
(713) 634-3601 Fax

Brian R. Matula
  Oklahoma Bar No. 14778
    brmatula@gpmlegal.net
GUM, PUCKETT & MACKECHNIE, LLP
The Hightower Building
105 N. Hudson Avenue, Suite 900
Oklahoma City, Oklahoma 73102
(405) 488-1212 Main
(405) 488-1216 Fax

**Counsel for Defendant NorthStar Alarm Services, LLC**

To the Honorable United States District Court:

Defendant NorthStar Alarm Services, LLC ("NorthStar") moves for judgment under Federal Rule of Civil Procedure 12(c)[1] as to Count II of Plaintiff's First Amended Class Action Complaint [Doc. 7], and for its brief in support, NorthStar respectfully submits as follows:

## INTRODUCTION

Plaintiff Robert H. Braver filed this case under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and several of the Federal Communications Commission's regulations allegedly prescribed under TCPA Sections 227(b) and 227(c). Generally, Braver contends that he received two telemarketing "robocalls" on his home telephone from Yodel Technologies, LLC ("Yodel") during the middle of the day Friday, August 26, 2016, advertising NorthStar's home-security alarms and alarm services. Braver alleges that Yodel altered or blocked the Caller ID information for both of these calls, and that NorthStar is vicariously responsible for all of Yodel's conduct with respect to these calls.[2]

---

[1] Alternatively, NorthStar's motion seeks dispositive relief under Rule 12(b)(1), Rule 12(h)(3), or Rule 56. To the extent necessary, NorthStar requests that the Court take judicial notice of the contents of Braver's live complaint.

[2] First Am. Compl., at ¶¶ 2, 18-25, 59; *see also* Order on NorthStar's Motion to Dismiss [Doc. 27], at pp. 11-12 (dismissing Braver's claims against NorthStar for direct liability).

The complaint's Count II is characterized as "Protection of Subscriber Privacy Rights, 47 U.S.C. § 227(c): Blocking or Failure to Transmit Accurate Caller ID."[3] In that count, Braver contends that,

> Defendants' robocalls described herein were initiated without transmitting the caller's name and/or without transmitting a valid telephone number, and therefore constitute of 47 CFR 64.1601(e) as promulgated under 47 USC § 227(c).[4]

For relief, Braver asserts that he is,

> entitled as a matter of law to obtain an injunction prohibiting Defendants from committing further violations of 47 CFR § 64.1601(e) and the recovery of the greater of actual damages or $500.00 for each violation as prescribed under 47 USC § 227(c)(5).[5]

Braver is not entitled to make the claim asserted in Count II. Only two sections of the TCPA, Sections 227(b) and 227(c), allow citizens to enforce the statute through private rights of action, and the only TCPA-related regulations that can be enforced through private actions are those promulgated by the Federal Communications Commission under those two sections. Braver's contention that 47 CFR § 64.1601(e) was promulgated under Section 227(c) is incorrect. Section 227(c) concerns do-not-call registries, not Caller ID information, and caselaw establishes that no private action exists under 47 CFR § 64.1601(e). That regulation was prescribed under one of the TCPA sections that does not permit private actions or provide for private remedies. Thus, Braver lacks standing to assert violations of the regulation his Count II relies upon, and under no

---

[3] First Am. Compl., at p. 13.

[4] First Am. Compl., at ¶ 64.

[5] First Am. Compl., at ¶ 66. Braver also seeks treble damages under Section 227(c)(5). First Am. Compl., at ¶¶ 67-68.

set of facts can NorthStar be liable to Braver, or enjoined through Braver, for Yodel's alleged altering of Caller ID information. As a result, Count II must be dismissed.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). *Ramirez v. Dep't of Corrections, Colorado*, 222 F.3d 1238, 1240 (10th Cir. 2000). Dismissal is thus appropriate if Braver "can prove no set of facts in support of the claims that would entitle [him] to relief." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997).

## ARGUMENT & AUTHORITIES

As explained in *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001),

> private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

Thus, for Braver to have a private right of action against NorthStar in this case, Congress must have intentionally provided that right in the TCPA itself. Here, the FCC regulation invoked by Braver, 47 C.F.R. § 64.1601(e), does not purport to create a private right of action. Even if it did, however, the regulation could not be the source of any such right. Again, *Alexander* is instructive:

> Both the Government and respondents argue that the *regulations* contain rights-creating language and so must be privately enforceable, but that argument skips an analytical step. Language in

4

> a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

532 U.S. at 291 (citations omitted).

Turning to the statutes at hand, the TCPA "does not create a private right of action for every violation of its provisions, but instead creates such a right only in specific circumstances." *Kopff v. Battaglia*, 425 F. Supp. 2d. 76, 91 (D.D.C. 2006); *Clark v. Avatar Tech. Phl, Inc.*, No. H-13-2777, 2014 WL 1342033, at *2 (S.D. Tex. Apr. 3, 2014). The first set of such "circumstances" is in Section 227(b). Section 227(b)(1) restricts the use of certain types of automated telephone equipment. Section 227(b)(2) directed that the FCC prescribe several categories of rules "implementing the requirements of this subsection." Section 227(b)(3), entitled "Private right of action," then creates a private action for any "violation of this subsection or the regulations prescribed under this subsection."

The only other set of "circumstances" in which the TCPA provides a private right of action is set forth in Section 227(c). That section was enacted in an effort "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Section 227(c) did not create any prohibitions itself; rather, it directed the FCC to do so through rulemaking proceedings. 47 U.S.C. § 227(c)(1)-(4). Those proceedings led to the creation of do-not-call databases

and the regulations prohibiting calls to numbers in those databases. *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011) (discussing Section 227(c) and associated FCC regulations). In Section 227(c)(5), Congress created a private right of action against telemarketers that repeatedly fail to honor a person's request not to be called under the framework promulgated by the FCC under Section 227(c). More specifically, Section 227(c)(5) gives a claim to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."

Significantly, nothing in Sections 227(b) or 227(c) concerns the altering or blocking of Caller ID information. (As discussed below, that is the subject of Section 227(e).) This fact, along with the history surrounding the TCPA and the promulgation of 47 CFR § 64.1601, has led courts to hold that claims for altering Caller ID information, like Braver's Count II under 47 CFR § 64.1601(e), do not arise under Sections 227(b) or 227(c) or any of the regulations prescribed under those subsections. This has consistently proven fatal to these types of claims in private actions.

Two recent cases tell this story well. The earlier of the two is *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017), issued on a motion for default judgment. In the opinion, the court accepted all of the complaint's factual allegations as true and, then, evaluated the legal efficacy of the pleaded claims in light of those facts. Worsham's complaint asserted 24 counts in all, many of which were under the TCPA, including a Count 4 that "asserted

a violation of the TCPA by a violation of 47 C.F.R. § 64.1601(e)(1), based on a failure to transmit certain information via Caller ID." *Id.* at *3, 7.

The court's substantive discussion began with a review of applicable law. It described TCPA Sections 227(b) and 227(c), and also discussed Section 227(d), which "makes it unlawful, *inter alia*, for anyone to make a telephone call using an automatic telephone dialing system that does not comply with the technical and procedural standards prescribed by the FCC." *Id.* at *3. After discussing the history of several FCC regulations, the court turned its attention to 47 C.F.R. § 64.1601(e):

> In recognition of the role played by Caller ID in helping consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations . . . , the FCC specifically amended this set of regulations in 2003 by adding § 64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number ("CPN") or automatic number identification of the calling party's billing number ("ANI") and, when available by the telemarketer's carrier, the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. However, it is not clear whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c* of the TCPA. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection *b* or subsection *c*. It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." Therefore, the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.

7

*Id.* at *4 (emphasis in original).

The Court went on to hold that Worsham's Count 4, "assert[ing] a violation of the TCPA by a violation of 47 C.F.R. § 64.1601(e)(1), based on a failure to transmit certain information via Caller ID," was not permitted:

> As previously concluded, an asserted violation of 47 C.F.R. § 64.1601(e)(1) is not properly brought under either the TCPA's subsection *b* or subsection *c*. Any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection *d*, and as earlier noted, no private right of action exists under the latter subsection of the TCPA. Count 4, consequently, fails to state a claim for relief.

*Id.* at *7. The Fourth Circuit affirmed the *Worsham* opinion in March 2017. 678 F. App'x at 165-66.

The second case discussing the origin of 47 CFR § 64.1601 and private actions under the regulation, *Meyer v. Capital Alliance Group*, 15-CV-2405, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017), was issued just months ago. Persuaded by *Worsham*, "the only case in the country to address this issue," and Supreme Court opinions such as *Alexander*, the *Meyer* court held that no private action existed under 47 CFR § 64.1601:

> Defendants contend Plaintiffs lack standing to bring Claim Six because 47 CFR § 64.1601(e) does not convey a private right of action. . . .
>
> Here, as Plaintiffs must concede, section 64.1601(e) does not expressly convey a private right of action. They nonetheless contend that the "genesis" of this section implies a private right of action was created because the section references TCPA subsection (c). However, as *Worsham* concluded, "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim."

8

> The Court finds *Worsham* persuasive and—in conjunction with the
> Supreme Court's general guidance—finds section 64.1601(e) does
> not create a private right of action. The Court declines the invitation
> to infer a private right of action where section 64.1601(e) is silent on
> the matter. Accordingly, Claim Six is DISMISSED with prejudice.

*Id.* at *16-17 (emphasis in original).

Braver's Count II suffers from the same inescapable problem as the claims

dismissed in *Worsham* and *Meyer*: Congress provided private citizens no right to enforce

47 C.F.R. § 64.1601(e). Enforcement of the regulation is left solely to the government.

Another section of the TCPA confirms this. As noted above, the TCPA's Section

227(e), entitled "Prohibition on provision of inaccurate call identification information,"

addresses the very types of conduct alleged under Braver's Count II.[6] That section lacks a

private-action provision like those in Sections 227(b) and 227(c). And in contrast to those

earlier sections, Section 227(e) expressly places the full responsibility of enforcement on

the FCC and the individual states. 47 U.S.C. § 227(e)(5)-(6); *see also Clark*, 2014 WL

1342033, at *2-4 (discussing the lack of a private right of action under Section 227(e) and

dismissing a claim for "transmit[ting] misleading or inaccurate call identification

information"); *Free Conference Corp. v. Comcast Corp.*, CV 15-4076, 2016 WL

7637664, at *6-7 (C.D. Cal. May 31, 2016) (dismissing claims for "Knowingly Altering

and Manipulating Caller Identification Information" since Section 227(e) does not

---

[6] Section 227(e)'s very existence also confirms that the subject of altering Caller ID information
does not fall under Sections 227(b) and 227(c). If the earlier subsections of the TCPA address the
subject, Section 227(e) is redundant at best. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476-77
(2003) ("[W]e should not construe the statute in a manner that is strained and, at the same time,
would render a statutory [text] superfluous.").

provide a private right of action); *Ghawi v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:13-cv-115, 2014 WL 6885141, at *6 (D. Conn. Dec. 1, 2014) (same).

All of this stands for the fact that claims like Braver's Count II are improper. Braver has no standing to assert an action for Yodel's alleged manipulation of Caller ID information, and under no set of facts can he prevail against NorthStar on his Count II. Consequently, that claim must be dismissed.

<u>**CONCLUSION & PRAYER**</u>

Because of Braver's lack of a private right of action and, in turn, standing, Count II of the First Amended Complaint fails. NorthStar is thus entitled to judgment on the pleadings as to this count under Federal Rules of Civil Procedure 12(c).

Respectfully submitted,

By: s/ Jesse R. Pierce
Jesse R. Pierce
Oklahoma Bar No. 22827
Attorney for Defendant NorthStar Alarm
    Services, LLC
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600 Main
(713) 634-3601 Fax
jpierce@pierceoneill.com

Nugent D. Beaty, Jr.
Texas Bar No. 24064872
Attorney for Defendant NorthStar Alarm
     Services, LLC
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600 Main
(713) 634-3601 Fax
dbeaty@pierceoneill.com

Brian R. Matula
Oklahoma Bar No. 14778
Attorney for Defendant NorthStar Alarm
     Services, LLC
GUM, PUCKETT & MACKECHNIE, LLP
The Hightower Building
105 N. Hudson Avenue, Suite 900
Oklahoma City, Oklahoma 73102
(405) 488-1212 Main
(405) 488-1216 Fax
brmatula@gpmlegal.net

*Counsel for Defendant*
*NorthStar Alarm Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2018, a copy of the foregoing document was served upon the all counsel of record by electronic mail pursuant to the parties' written agreement.

         s/ Jesse R. Pierce
            Jesse R. Pierce

962449

11