## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. ROBERT H. BRAVER, for himself and all individuals similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 5:17-cv-00383-F ) |
| 1. NORTHSTAR ALARM SERVICES, LLC, a Utah Limited Liability Company, 2. YODEL TECHNOLOGIES, and 3. DOES 2-10, UNKNOWN INDIVIDUALS, | ) ) ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF ROBERT H. BRAVER'S RESPONSE IN OPPOSITION TO

### DEFENDANTS' MOTION TO STAY PENDING DECLARATORY RULING

**HUMPHREYS WALLACE HUMPHREYS, P.C.**
David Humphreys, OBA #12346
Luke Wallace, OBA #16070
Paul Catalano, OBA #22097
9202 S. Toledo Avenue
Tulsa, OK  74137
(918) 747-5300 / (918) 747-5311 (Fax)
david@hwh-law.com
luke@hwh-law.com
paul@hwh-law.com

**KEOGH LAW LTD**
Keith J. Keogh, IL #6257811,
Appearing *Pro Hac Vice*
Timothy J. Sostrin, IL #6290807,
Appearing *Pro Hac Vice*
55 W Monroe St, Ste 3390
Chicago, IL  60603
(312) 726-1092 / (312) 726-1093 –fax
keith@keoghlaw.com
tsostrin@keoghlaw.com

**ATTORNEYS FOR PLAINTIFF ROBERT H. BRAVER**

## <u>TABLE OF CONTENTS</u>

I.      Introduction ...........................................................................................1

II.     Factual and Procedural Background ............................................................2

III.    Defendants Have Waived Their Request for a Stay ......................................6

IV.    The "Primary Jurisdiction" Doctrine Does Not Apply to this Case .............7

      A.    Standard for Application of Primary Jurisdiction Doctrine ...................8

      B.    This Court Can Interpret a Clear and Unambiguous Statute .................9

      C.    There is Little Room for Agency Discretion Here ...............................13

V.      The Requested Stay Would Result in Indefinite and Unconscionable Delay .............15

VI.    Conclusion ............................................................................................20

CERTIFICATE OF SERVICE .....................................................................22

## TABLE OF AUTHORITIES

**Federal Cases**

*Abrantes v. Northland Grp., Inc.*,
    2015 U.S. Dist. LEXIS 48430 (N.D. Cal. 2015) ...................................................... 9

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ............................................................................. 19

*Alvarado v. Bay Area Credit Service, LLC*,
    2015 WL 224950 (N.D. Cal. 2015) ........................................................... 10, 18, 19

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................. 8

*Baum v. ADT LLC*,
    2018 U.S. Dist. LEXIS 180530 (W.D. Pa. 2018) .................................................. 9

*Beiler v. GC Servs. L.P.*,
    2014 U.S. Dist. LEXIS 156171 (M.D.N.C. Nov. 3, 2014) .................................... 10

*Braver v. Northstar*,
    18-603 (10th Cir. 2018) ..................................................................................... 4, 5

*Brown v. Secretary of Health & Human Servs.*,
    46 F.3d 102 (1st Cir. 1995) ................................................................................... 9

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) .......................................................................................... 15

*City of Chanute v. Williams Natural Gas Co.*,
    1994 U.S. Dist. LEXIS 15719 (D. Kan. 1994) ..................................................... 15

*CSX Transp. Co. v. Novolog Bucks County*,
    502 F.3d 247 (3d Cir. 2007) .................................................................................. 6

*CSX Transp., Inc. v. Transportation-Comm. Int'l Union*,
    413 F.Supp.2d 553 (D. Md. 2006) ......................................................................... 6

*Espejo v. Santander Consumer USA, Inc.*,
    2014 U.S. Dist. LEXIS 120498 (N.D. Ill. Aug. 28, 2014) .................................... 10

*Fail v. Diversified Consultants, Inc.*,
    2014 U.S. Dist. LEXIS 78090 (M.D. Fla. June 9, 2014) ...................................... 10

*Fitzhenry v. ADT Corp.*,
No. 14–80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ................................. 13

*Frydman v. Portfolio Recovery Assocs., LLC*,
2011 U.S. Dist. LEXIS 69502 (N.D. Ill. 2011) ........................................................ 9

*GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*,
650 F.3d 1257 (9th Cir. 2011) ................................................................................ 6

*Global Crossing Bandwith, Inc. v. OLS, Inc.*,
2009 U.S. Dist. LEXIS 22402 (W.D. N.Y. 2009) .................................................... 7

*Global NAPs, Inc. v. Verizon New England, Inc.*,
444 F.3d 59 (1st Cir. 2006) ..................................................................................... 6

*Gulf Oil Corp. v. Tenneco, Inc.*,
608  F. Supp. 1493 (E.D. La. 1985) ...................................................................... 15

*Hartley-Culp v. Credit Mgmt. Co.*,
2014 U.S. Dist. LEXIS 130308 (M.D. Pa. Sept. 15, 2014) ................................... 10

*In re Taylor*,
899 F.3d 1126 (10th Cir. 2018) ............................................................................. 10

*Jordan v. Nationstar Mortg. LLC*,
2014 U.S. Dist. LEXIS 148844 (N.D. Cal. Oct. 20, 2014) ................................... 16

*Kendra Oil & Gas, Inc. v. Homco, Ltd.*,
879 F.2d 240 (7th Cir. 1989) .................................................................................. 6

*LSSiData Corp. v. Comcast Phone, LLC*,
2013 U.S. Dist. LEXIS 188580 (N.D. Ga. 2013) .................................................... 6

*McKenna v. WhisperText*,
2014 U.S. Dist. LEXIS 138243 (N.D. Cal. Sept. 29, 2014) ................................... 10

*Meyer v. Bebe Stores, Inc.*,
2015 U.S. Dist. LEXIS 330216 (N.D. Cal. 2015) ................................................. 10

*Mississippi Power & Light Co. v. United Gas Pipeline Co.*,
532 F.2d 412 (5th Cir. 1976) ................................................................................. 16

*Mojica v. Securus Technologies, Inc.*,
2015 WL 429997 (W.D.Ark.  2015) ...................................................................... 20

*Morsey v. Chevron USA, Inc.*,
    779 F.Supp. 150 (D.Kan. 1991) ............................................................ 6

*Moser v. FCC*,
    46 F.3d 970 (9th Cir. 1995) ................................................................. 12

*Nat'l Communs. Ass'n v. AT&T*,
    46 F.3d 220 (2nd Cir. 1995) ................................................... 16, 18, 19

*National Credit Union Admin. v. First Nat. Bank & Trust Co.*,
    522 U.S. 479 (1998) ........................................................................... 15

*Ohio Valley Envt'l Coalition v. Coal-Mac, Inc.*,
    775 F.Supp.2d 900 (S.D. W. Va. 2011) ................................................ 9

*Peralta v. Rack Room Shoes, Inc.*,
    2018 WL 6331798 (E.D.La., 2018)...................................................... 20

*Prater v. Medicredit Inc.*,
    2014 U.S. Dist. LEXIS 133603 (E.D. Mo. Sept. 18, 2014) ................... 10

*Reiter v. Cooper*,
    507 U.S. 258 (1993) ....................................................................... 8, 16

*Ryan v. Chemlawn Corp.*,
    935 F.2d 129 (7th Cir. 1991) ................................................................ 9

*Sanaah v. Howell*,
    2009 U.S. Dist. LEXIS 35260 (D. Colo. 2009)...................................... 20

*Soriano v. Stellar Recovery, Inc.*,
    2014 U.S. Dist. LEXIS 144130 (W.D. Wash. Oct. 7, 2014)................... 10

*Soundboard Association v. FTC*,
    888 F.3d 1261 (D.C. Cir. 2018) .......................................................... 14

*S. Utah Wilderness Alliance v. BLM*,
    425 F.3d 735 (10th Cir. 2005) .............................................................. 8

*Swift v. Bank of Am. Corp.*,
    2015 U.S. Dist. LEXIS 189915 (M.D. Fla. 2015)................................. 17

*TON Services, Inc. v. Qwest Corp.*,
    493 F.3d 1225 (10th Cir. 2007) ............................................................ 8

*United States v. DISH Network, LLC*,
  2011 U.S. Dist. LEXIS 10943 (C.D. Ill. 2011) ...................................................... 16

*United States v. McDonnell Douglas Corp.*,
  751 F.2d 220 (8th Cir. 1984) ...................................................................... 16

*United States Telecom Ass'n v. FCC*,
  359 F.3d 554 (D.C. Cir. 2004) .................................................................... 16

*Williams Pipe Line Co. v. Empire Gas Corp.*,
  76 F.3d 1491 (10th Cir.1996) ..................................................................... 8

**Statutes**

5 USC § 554 ................................................................................................ 16

47 USC § 227 ........................................................................................10, 13

**Other**

47 C.F.R. § 1.2.............................................................................................. 16

105 Stat.2394, Pub. L. No. 102-243, § 2(1)-(3) (Dec. 20, 1991). ...............11, 15

*Comments of Diana Mey*, CG 02-278 (November 29, 2012), available at
  https://ecfsapi.fcc.gov/file/7022069805.pdf............................................ 17

*Comments of Gerald Roylance*, CF 02-278 (November 29, 2012), available at
  https://ecfsapi.fcc.gov/file/7022069873.pdf ........................................... 17

*Comments of Joe Shields*, CG 02-278 (November 14, 2012), available at
  https://ecfsapi.fcc.gov/file/7022056660.pdf ...........................................17

*Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the
  Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA
  International Decision*, 33 FCC Rcd. 4864 (May 14, 2018)................................. 19

*Consumer And Governmental Affairs Bureau Seeks Comment On Petition For
  Declaratory Ruling Filed By Todd C. Bank Regarding The TCPA's Provision
  Concerning Prerecorded Calls*, 31 FCC Rcd. 2292, 2292. ................................... 18

*Consumer and Governmental Affairs Bureau Seeks Comment on Request for
  Clarification from Callassistant, LLC*, 27 FCC Rcd 13059, 13059 (October 16,
  2012) ................................................................................................... 17

*Do-Not-Call Implementation Act*, 117 Stat. 557, Pub. L. 108-10 at § 3 ........................... 14

https://www.merriam-webster.com/dictionary/prerecorded ............................................... 11

*In re Joint Petition Filed by Dish Network*, 28 FCC Rcd. 6574, 6588 (May 9, 2013) ..... 14

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act*,
     27 FCC Rcd. 1830, 1831 (February 15, 2012) ....................................................... 14

*In re Rules and Regulations Implementing the TCPA*,
     30 FCC Rcd. 7961 (July 10, 2015) ....................................................................... 19

*Webster's Ninth New Collegiate Dictionary*, Merriam Webster Inc. (1991) ................... 11

The Plaintiff, Robert Braver for himself and the certified class, objects to Defendants' Motion to Stay Pending Declaratory Ruling [Dkt 88][1].  In support, Plaintiff states the following:

## I.        Introduction

After litigating in this court for nearly two years, Defendants argue for the first time that, under the doctrine of "primary jurisdiction," only the Federal Communications Commission (FCC) is equipped to resolve this case.  In other words, we have all been wasting our time.

Defendants' motion to stay is a transparent attempt to delay justice.  Three weeks after the Tenth Circuit denied Defendants' interlocutory appeal of this Court's order granting class certification, NorthStar filed a petition in the FCC for a declaratory ruling absolving it of liability. Dkt 88-1 at p. 3.  One day later, NorthStar filed its motion to stay, contending that this Court should step aside because "the FCC is poised to" rule on NorthStar's petition. Dkt 88 at p. 23.  This Court need not and should not step aside.

First, Defendants have waived any argument that a stay is warranted by failing to raise the issue earlier.  Numerous cases discussed below have found waiver of primary jurisdiction arguments in these circumstances and the Court should do the same here.

Second, the primary jurisdiction doctrine does not apply in any case because the sole question at issue, (i.e., what does the statute mean?) is one that does not require agency expertise to resolve; this Court is well-equipped to interpret the statute on its own.

---

[1] Defendant NorthStar Alarm Services, LLC ("NorthStar") filed the motion [Dkt 88] in which Defendant Yodel Technologies, LLC ("Yodel") joined [Dkt 92].  Consequently, Plaintiff refers to Defendants collectively in responding to the motion.

Specifically, Defendants contend that only the FCC can properly interpret the phrase 'an artificial or prerecorded voice to deliver a message.' Dkt 88 at p. 9.  This is not an arcane point of law requiring the expertise of the FCC; it requires only the straightforward interpretation of the unambiguous language in the statute.

Third, a stay would be improper because it would result in an indefinite and unconscionable delay.  The FCC might never rule on NorthStar's petition, and even if it chose to do so, would likely take years to issue a ruling.  This of course says nothing of the time that would be necessary to resolve the inevitable appeal of any such ruling by the soundboard industry or aggrieved consumers.  The requested stay would not serve the interests of judicial economy and will only serve to prejudice Plaintiff and the certified class.

## II.    Factual and Procedural Background

As Yodel's CEO testified, Yodel's business is to place telemarketing calls on behalf of its commercial clients using its prerecorded soundboard system. Ex. 1 at 16:6-17, 55:13-17.  All of the calls Yodel made on behalf of NorthStar were made using the same soundboard system. Ex. 1 at 32:11-15, 54:17-24, 55:13-17. NorthStar knew beforehand that Yodel used prerecorded soundboard calls and approved the prerecorded script for use by the soundboard agents. Ex. 2 at 31:7-10, 67:2-24. Yodel contracted with "voice talent" who recorded various spoken messages and saved those recorded messages as ".wav files" on a computer for later use by the soundboard agents. Ex. 3 at 103:1-10.

An automated predictive dialer initiated each of the calls at issue in this case.   Ex. 1 at 37:16-39: 4, 41:19-24. A computer dialed the telephone number, detected whether or

2

not it was answered by a human, and if so, transferred the connected call to a soundboard

agent. Ex. 1 at 37:16-39: 4, 41:19-24.  The soundboard agents were not required to know

the English language and were trained only to play prerecorded messages in a scripted

order by pressing the appropriate buttons in the order dictated by the script. Ex. 3 at 97:14

– 98:10; *see also* Ex. 4.

Thus, after answering a call connected by Yodel's predictive dialer, the first thing

a lead prospect heard was a prerecorded message stating:  "Hello this is Amy[2], I am

security advisor, can you hear me okay?"  Ex. 4.  The script proceeded as follows, with

each numbered paragraph reflecting a separate prerecorded .wav file to be played by the

soundboard agent:

> 1. Intro: Hello this is Amy, I am security advisor, can you hear me okay?
> 2. Purpose: Okay, good, I am with the security help center and the reason why I am calling today is that there have been issues with false alarms, with home security systems in your neighborhood, have you been informed about that?
> 3. Security Concern: With crime rates and mass shooting on the rise in the US and national security with our borders, you can see having false alarms with home security systems in your area can be a big concern right?
> 4. My job: So it's my job to make sure that all the homes in your neighborhood are aware of the technologies and security programs available in your area, I just have a couple of questions to see what your home will qualify for. Are you the homeowner? Ex. 4.

Defendants actively concealed their identity from the recipients of their

telemarketing calls.  In order to mislead consumers into thinking that a local number was

calling, the soundboard system was designed to display a bogus telephone number on the

recipient's caller id, using the same area code as the telephone number as the recipient

---

[2] At different points, this script was recorded by "Amy," "Joe," and "Billy" with no meaningful changes to the script. Ex. 3 at 102:11-103:7, 108:19-109:18.

99.51% of the time. Ex. 3 at 87:9-19; see also Ex. 5 at p. 11 ¶ 39.  This is illegal. 47

U.S.C. § 227(e).  Also, Defendants used the alias "Security Help Center" in the approved,

prerecorded sales script, despite knowing there was no such entity. Ex. 4; Ex. 2 at 69:8-

23; Ex. 3 at 104:12-24. Despite receiving numerous complaints about the robocalls,

NorthStar's call center employees denied any knowledge about use of a robocall system

when confronted with irate consumers. Ex. 2 at 117:5-118:11, 121:15-123:1; Ex. 6.  After

one such complaint, NorthStar's telemarketing director asked Yodel: "How would they

know leads are being sent to NorthStar if they are receiving a call from the Security Help

Center? I am feeling exposed, please advise." Ex 7. Months later, when Braver threatened

legal action, NorthStar debated whether to cease the calls and expressly stated in writing

the decision would depend on how much money it was making. Ex. 2 at 178:7-180:25;

Ex. 8. Apparently NorthStar believed its profits made illegality worth the risk; it chose to

continue the calls. Ex. 9.

   After extensive briefing and an all-day evidentiary hearing, this Court granted

Plaintiff's motion for class certification on October 15, 2018. Dkt 72.  In that ruling, the

Court held that "[b]ased on the evidence heard to date, it appears that all of the calls at

issue delivered a prerecorded soundboard message." Dkt 72. [3]

   On October 29, 2018, NorthStar filed a petition for permission to appeal the

Court's ruling in the Tenth Circuit, which Yodel later joined. *See Braver v. Northstar*, 18-

---

[3] Defendants argue that this Court found some calls did not include any prerecorded voice. Dkt 88 pp. 5-6. The Court's Order made no such finding.  Instead, Yodel speculated that a new soundboard agent could err and transfer a call directly to a live agent without playing any of the prerecorded voice messages but could not point to any record supporting this speculation.  Ex. 10 at 57:15-60:17; 70:21-71:2.

603 (10th Cir. 2018).  The Tenth Circuit denied Defendants' petition on December 13, 2018. *Id.*

On January 2, 2018, NorthStar filed a Petition for Declaratory Ruling in the FCC, contending that "soundboard technology has become the subject of **underserved condemnation" and "baseless class action litigation**." Dkt 88-1 at pp. 5, 8 (emphasis added).  No longer saddled with the damning factual record developed in this case, NorthStar tells the FCC that, in fact, "**soundboard technology *protects* consumers**" and "can ensure that consumers are not being mislead." *Id.* at p. 17 (emphasis added). NorthStar's petition acknowledges that the FCC might "decline[] to rule at all," but begs the FCC to intervene because "**courts . . . ought not to be expected to understand the technology** and the purposes of the Act as deeply as this Commission does." *Id.* at p. 18 (emphasis added).

One day after NorthStar filed its petition in the FCC, Defendants filed this motion to stay pending the FCC's ruling on its petition.  Dkt 88.  Defendants claim "the FCC is poised to" rule whether the TCPA applies to soundboard calls "as it currently is considering NorthStar's Petition." *Id*. at p. 2.

That Defendants' purpose is delay, rather than concern that the "soundboard technology industry" be properly understood, is implicit and can be easily seen by looking at their conduct here.  This action was filed on April 5, 2017. Dkt 1.  NorthStar waited twenty-two months to seek the opinion of the FCC on soundboard technology, waiting until after the Court certified a class and its petition to appeal was decided by the 10th Circuit.  If Defendants truly believed that an FCC opinion was likely to be in their

favor, it would have been senseless for them to spend both the time and money to litigate these issues in this court (motion practice, depositions, evidentiary hearings, etc.), while delaying an opinion from the FCC.  The answer is simple, Defendants have filed the FCC petition as a last resort and are hoping for an indefinite stay of the proceedings and an indefinite delay in a finding of liability.

### III.    Defendants Have Waived Their Request for a Stay

Defendants' failure to move for a stay earlier in these proceedings has doomed their motion.  "[P]rimary jurisdiction arguments can be waived." *CSX Transp. Co. v. Novolog Bucks County*, 502 F.3d 247, 253 (3d Cir. 2007); *Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 242 (7th Cir. 1989) (same); *Global NAPs, Inc. v. Verizon New England, Inc.*, 444 F.3d 59, 75 n. 16 (1st Cir. 2006) (finding argument waived); *CSX Transp., Inc. v. Transportation-Comm. Int'l Union*, 413 F.Supp.2d 553, 564 (D. Md. 2006) ("the doctrine of primary jurisdiction . . . is waivable by simple failure to assert it"), aff'd, 480 F.3d 678 (4th Cir. 2007).

As such, "courts have been reluctant to invoke primary jurisdiction when the parties have been litigating a case for a long period of time or when the party moving for referral files its motion late in the litigation process." *LSSiData Corp. v. Comcast Phone, LLC*, 2013 U.S. Dist. LEXIS 188580, *32-33 (N.D. Ga. 2013); *see also GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1264 (9th Cir. 2011) (affirming denial of stay under primary jurisdiction doctrine because the defendant "waited until shortly before trial to raise the issue at all."); *Morsey v. Chevron USA, Inc.*, 779 F.Supp. 150, 153 (D.Kan. 1991) (denying defendant's motion for a stay where defendant "waited nearly

two years from the time it removed this action to assert primary jurisdiction"); *Global Crossing Bandwith, Inc. v. OLS, Inc.*, 2009 U.S. Dist. LEXIS 22402 (W.D. N.Y. 2009) (denying motion to stay on primary jurisdiction grounds where "Defendants certainly could have raised the primary jurisdiction matter much earlier in this litigation, but they chose instead to wait until after the Court had ruled adversely to them in certain respects in the summary judgment decision.")

Defendants have waived their arguments for the same reasons in this case.  They have litigated this case for two years and only move to stay after this Court (and the Tenth Circuit) has issued an adverse ruling against them.  The Court should deny the motion to stay for this reason alone.

## IV.    The "Primary Jurisdiction" Doctrine Does not Apply to this Case

It is Defendants' contention that ascertaining congressional intent in the TCPA and giving effect to the legislative will not only requires interpretation of a vague statute, but that such interpretation requires the specialized expertise of the FCC.  Defendants' contentions have no merit.  This is not a complicated issue.  The statute clearly and unambiguously makes it illegal "to initiate any telephone call . . . . using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]"  This Court is well-equipped to determine whether or not that prohibition applies to the calls at issue in this case.  There is no need for specialized knowledge or input from the FCC.

## A.  Standard for Application of Primary Jurisdiction Doctrine

The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue *within the special competence* of an administrative agency." *Reiter v. Coope*r, 507 U.S. 258, 268 (1993) (emphasis added). However, the primary jurisdiction doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *S. Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 751 (10th Cir. 2005) (citation omitted).  It is thus most often applied in "cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency." *Williams Pipe Line Co. v. Empire Gas Corp.,* 76 F.3d 1491, 1496 (10th Cir.1996).

A district court's decision to invoke the primary jurisdiction doctrine:

"require[s] it to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency."  Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine *may be* appropriate. There is, however, *no "fixed formula ... for applying the doctrine.*" Courts should consider case-by-case whether "the reasons for the existence of the doctrine are present and whether the purposes it serves [i.e., uniformity and resort to administrative expertise] will be aided by its application in the particular litigation."

*TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238–39 (10th Cir. 2007) (emphasis added).

Finally, as addressed further below, judicial efficiency is a central consideration when invoking primary jurisdiction. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) ("'Effiency' is the deciding factor in whether to invoke primary

jurisdiction."); *Brown v. Secretary of Health & Human Servs.*, 46 F.3d 102, 114, n. 24

(1st Cir. 1995) (primary jurisdiction doctrine "look[s] to similar considerations of judicial

economy"); *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991) ("primary

jurisdiction serves judicial economy").

### B.  This Court Can Interpret a Clear and Unambiguous Statute

Statutory interpretation is not the special competence of any administrative

agency; it is the special competence of the courts. *See Ohio Valley Envt'l Coalition v.

Coal-Mac, Inc.*, 775 F.Supp.2d 900, 919 (S.D. W. Va. 2011) ("This is not an area of fact

requiring the regulatory expertise that has been delegated to the State under the CWA.

This is an area of law where this Court has expertise—statutory interpretation. The Court

is confident in its ability to determine these questions of law. Accordingly, this Court

FINDS that the doctrine of primary jurisdiction is not applicable in these actions.")

Thus, courts in TCPA actions frequently deny primary jurisdiction motions to stay

pending FCC interpretations of the TCPA because they recognize that courts are capable

of interpreting the statute themselves. *See Abrantes v. Northland Grp., Inc.*, 2015 U.S.

Dist. LEXIS 48430, *7 (N.D. Cal. 2015) ("judges are well-suited to resolve the kinds of

statutory interpretation questions at issue here."); *Frydman v. Portfolio Recovery Assocs.,

LLC*, 2011 U.S. Dist. LEXIS 69502, *9 (N.D. Ill. 2011) ("The issues raised by defendant

are questions of statutory interpretation which can be and frequently are resolved by

courts."); *Baum v. ADT LLC*, 2018 U.S. Dist. LEXIS 180530, *14 (W.D. Pa. 2018) ("the

doctrine of primary jurisdiction is not applicable here because the issue . . ., a legal

question of statutory interpretation, is within the conventional experience of judges.");

*Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 330216, * 12 (N.D. Cal. 2015)

("judges are well-suited to resolve questions of statutory interpretation.").[4]

This case in particular is ill-suited for invocation of primary jurisdiction because the provision of the statute at issue is clear and unambiguous and thus requires no specialized knowledge to interpret.  "In determining whether statutory language is ambiguous, we look to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' A statute is ambiguous if it 'is capable of being understood by reasonably well-informed persons in two or more different senses.'"  *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018)(citations omitted).

The relevant portion of the TCPA states:

> (b) Restrictions on use of automated telephone equipment
>> (1) Prohibitions
>> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, . . .

47 USC § 227(b)(1)(B).

---

[4] *See also Alvarado v. Bay Area Credit Service, LLC*, 2015 WL 224950 (N.D. Cal. 2015) (denying motion to stay based on FCC petitions in TCPA case); *Beiler v. GC Servs. L.P.*, 2014 U.S. Dist. LEXIS 156171, *13 (M.D.N.C. Nov. 3, 2014) (same); *Soriano v. Stellar Recovery, Inc.*, 2014 U.S. Dist. LEXIS 144130, *5 (W.D. Wash. Oct. 7, 2014) (same); *McKenna v. WhisperText*, 2014 U.S. Dist. LEXIS 138243, *11 (N.D. Cal. Sept. 29, 2014) (same); *Prater v. Medicredit Inc.*, 2014 U.S. Dist. LEXIS 133603, *13 (E.D. Mo. Sept. 18, 2014) (same); *Hartley-Culp v. Credit Mgmt. Co.*, 2014 U.S. Dist. LEXIS 130308, *4-5 (M.D. Pa. Sept. 15, 2014) (same); *Espejo v. Santander Consumer USA, Inc.*, 2014 U.S. Dist. LEXIS 120498, * (N.D. Ill. Aug. 28, 2014) (same); *Fail v. Diversified Consultants, Inc.*, 2014 U.S. Dist. LEXIS 78090, *4 (M.D. Fla. June 9, 2014) (same)

NorthStar has asked the FCC to issue a ruling "clarifying that 'soundboard' or 'avatar' calls do not constitute 'artificial or prerecorded voice' calls subject to the [TCPA.]" Dkt 88, p. 1.  Defendants contend that a stay is appropriate because the phrase "artificial or prerecorded voice to deliver a message" is ambiguous and point out that "there is no statutory definition of 'an artificial or prerecorded voice.'" Dkt 88 at p. 19. Yet there is clearly no need for a definition in the statute because "prerecorded" and "message" are not ambiguous.  Nor are they highly technical terms.

Prerecorded means "recorded in advance." https://www.merriam-webster.com/dictionary/prerecorded.[5] There is no debate that the messages delivered here were recorded in advance using voice talent hired for that specific purpose using the script pre-approved by NorthStar.  "Message" is equally unambiguous as "a communication in writing, in speech or by signals."  Webster's Ninth New Collegiate Dictionary, Merriam Webster Inc. (1991).

The Court does not need the FCC to determine whether Defendants' soundboard calls used a prerecorded voice to deliver a message.  Indeed, it has already found exactly that. Dkt 72 at p. 12 ("Based on the evidence heard to date, it appears that all of the calls at issue delivered a prerecorded soundboard message.")  There is no ambiguity regarding a violation of the clear prohibition of the statute.  No specialized agency interpretation is required.

---

[5] Webster's Ninth New Collegiate Dictionary defines "prerecord" as "to record . . . in advance of presentation or use."   Webster's Ninth New Collegiate Dictionary, Merriam Webster Inc. (1991).  This was the definition at the time the TCPA was passed in 1991. 105 Stat.2394, Pub. L. No. 102-243, § 2(1)-(3) (Dec. 20, 1991).

Defendants attempt to distinguish this matter because of the specific technology used to initiate the calls, contending that "whether soundboard calls are calls that utilize artificial or prerecorded voices to deliver a message – is a complex, technical, and policy-driven question within the FCC's discretion." Dkt 88 at p 14. Yet it cannot explain what makes this issue so complex or technical that the Court cannot resolve it.

Defendants claim that "the few courts that already have considered the issue have suggested strongly that soundboard calls are not artificial or prerecorded voices that deliver a message under the TCPA." Dkt 88 at p. 17.  This position is not supported by the authority cited.  In *Moser v. FCC*, the Ninth Circuit was examining whether the TCPA restrictions on prerecorded calls was an unconstitutional infringement on free speech.  *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995).  As an introduction to the issue, the *Moser* Court discussed Congress' determination that "[c]ustomers who wanted to remove their names from calling lists were forced to wait until the end of taped messages to hear the callers' identifying information." *Id* at 972.  Of course, the prerecorded messages at issue in this case did not identify the caller either. [6]  In any event, the *Moser* Court in no way addressed soundboard technology.  Instead, it merely highlighted the common knowledge that auto dialed calls using prerecorded messages are especially offensive and a nuisance to the public.  *Id.*

---

[6] The offensive nature and public nuisance of these telemarketing calls is not alleviated by the use of soundboard technology, especially where, as here, the prerecorded messages do not include a single excerpt informing consumers that they could opt out of further calls, remove their name from calling lists, or identify either Northstar or Yodel as the caller and or seller.  See, Ex. 4.

Defendants also rely on *Fitzhenry v. ADT Corp.*, No. 14–80180, 2014 WL 6663379, at *6 (S.D. Fla. Nov. 3, 2014).  Defendants relied heavily on this case in its argument that a class should not be certified.  Dkt 57 at pp. 11-12.  The Court considered this argument in the present matter and rejected *Fitzhenry* stating "Defendants argue that class-wide evidence cannot identify calls that include live human voices; however, the fact that some calls may have included live voices, at some stage, does not defeat any of the elements of the claim."   Dkt 72 at p. 21.

Defendants have failed to show that the FCC is better equipped than this Court to determine what the phrase "prerecorded voice to deliver a message" means.

## C.  There is Little Room for Agency Discretion Here

Although Defendants contend that they present a policy driven question within the agency's discretion, the FCC does not actually have the discretion that Defendants imply.

First, the FCC does not have the authority to exempt these calls from the TCPA. While the TCPA gives the FCC the latitude to exempt certain calls otherwise subject to 47 USC § 227(b)(1)(B), the FCC is expressly proscribed from exempting calls that include the transmission of an unsolicited advertisement at  47 USC § 227(b)(2)(B). Thus, the FCC could not possibly exempt the calls at issue here from the TCPA as a matter of policy.

Second, the Federal Trade Commission (FTC) has already ruled that its Telemarketing Sales Rules (TSR) regulates soundboard calls as calls that deliver

prerecorded voices under its rules. Ex. 11. [7] Because both the FTC and FCC have

jurisdiction over telemarketing, ***Congress ordered*** the FCC to "consult and coordinate

with the Federal Trade Commission [FTC]" to maximize consistency with the FTC's

Telemarketing Sales Rule ("TSR"). *Do-Not-Call Implementation Act*, 117 Stat. 557, Pub.

L. 108-10 at § 3.  As such, the FCC has repeatedly stated that it seeks to **harmonize** its

rules with the FTC's TSR. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act*, 27 FCC Rcd. 1830, 1831 (February 15, 2012); *In re Joint*

*Petition Filed by Dish Network*, 28 FCC Rcd. 6574, 6588 (May 9, 2013).

 In its 2016 letter (which reversed an opinion in 2009), the FTC stated "Simply put,

since we issued the letter in 2009, staff has seen evidence of the widespread use of

soundboard technology in a manner that does not represent a normal, continuous, two-

way conversation between the call recipient and a live person." Ex. 11 at p. 2.  The FTC

went on to state "It is indisputable that calls made using soundboard technology deliver

prerecorded messages."  *Id*. at p. 3. "[E]ven with a 1-to-1 limitation in place, such calls

would still 'deliver a prerecorded message' and therefore would fall within the plain

language of [FTC regulations].

 In accordance with Congress's direction that the two agencies harmonize their

rules, the FCC has almost no latitude to depart from the FTC's lead.  In any event, the

evidence of abusive use of soundboard technology compiled by the FTC between 2009

---

[7] This opinion was upheld by the DC Circuit after being challenged on procedural not substantive grounds.  *Soundboard Association v. FTC*, 888 f3d 1261 (D.C. Cir. 2018) (petition for cert to the Supreme Court pending).

and 2016 should dispel any notion that the FCC would as a matter of policy issue an industry wide pass for calls that utilize soundboard technology.

Third and finally, the FCC cannot simply stray from the plain language of the statute as a matter of policy  "'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *National Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 499–500 (1998)(quoting, *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837,  842–843 (1984)).  Congress intended to regulate all prerecorded calls. *See* 105 Stat. 2395, Pub. L. 102-243 ("the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, *regardless of the type of call*") (emphasis added).  Defendants have failed to set forth any interpretation of the statute that would somehow exempt soundboard telemarketing calls yet still comport with congressional intent.

Thus, Defendants have failed to establish that the primary jurisdiction doctrine applies to this case.

## V.     The Requested Stay would Result in Indefinite and Unconscionable Delay

As noted above, when faced with a primary jurisdiction argument, a court must also consider whether the requested stay would promote judicial economy. *See City of Chanute v. Williams Natural Gas Co.*, 1994 U.S. Dist. LEXIS 15719, * 23 (D. Kan. 1994) ("the scope of an agency's primary jurisdiction is a more pragmatic determination based on the relative efficiency and expertise of courts vis-a-vis regulatory agencies.") (quoting *Gulf Oil Corp. v. Tenneco, Inc.*, 608  F. Supp. 1493 (E.D. La. 1985)).

Thus, invocation of the doctrine is not appropriate where it is likely to cause substantial delay. *Reiter v. Cooper*, 507 U.S. 258, 270 (1993) (referral to administrative agency under primary jurisdiction doctrine was not appropriate because, among other things, "referral of the [issue] could produce a substantial delay").  As one court put it, "[t]he obligation of the court to provide a just, speedy and inexpensive determination of this case" under Fed. R. Civ. P. 1 weighs against a stay in ***situations where agency action cannot be expected anytime soon***. *Jordan v. Nationstar Mortg. LLC*, 2014 U.S. Dist. LEXIS 148844, *3-4 (N.D. Cal. Oct. 20, 2014) (emphasis added).  "The court must [] balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Nat'l Communs. Ass'n v. AT&T*, 46 F.3d 220, 225 (2nd Cir. 1995) ("a potential delay of even two years more than outweighs any benefit that might be achieved by having the FCC resolve this relatively simple factual dispute."); *see also United States v. DISH Network, LLC*, 2011 U.S. Dist. LEXIS 10943, *5 (C.D. Ill. 2011) ("The doctrine should be invoked sparingly since it often results in added expense and delay to the litigants.") (citing *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984); *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 418-19 (5th Cir. 1976)).

In this case, Defendants' requested stay is almost certain to result in an indefinite and unconscionable delay of justice.  To begin, the FCC ***might never rule*** on NorthStar's petition for a declaratory ruling; to be sure, it is under no obligation to do so. *See* 5 USC § 554(e)*;* 47 C.F.R. § 1.2; *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) (noting that there is "no assurance when, or even whether, the Commission

16

might respond" to a petition for declaratory ruling); *Swift v. Bank of Am. Corp.*, 2015 U.S. Dist. LEXIS 189915, *9 (M.D. Fla. 2015) ("Staying this action indefinitely until the FCC makes a ruling on the UHS and ACA petitions would prejudice the Plaintiffs by delaying their day in court, especially since it is uncertain whether the FCC will ever rule on the petitions.")

In fact, soundboard telemarketers petitioned the *FCC eight years ago* to rule that the TCPA's prohibitions on prerecorded calls did not apply to soundboard technology yet the FCC has never ruled on the issue. *Consumer and Governmental Affairs Bureau Seeks Comment on Request for Clarification from Callassistant, LLC*, 27 FCC Rcd 13059, 13059 (October 16, 2012) (seeking comment on request made by CallAssistant, LLC on June 18, 2010 to "clarify the applicability of the Telephone Consumer Protection Act and the Commission's related rules to CallAssistant's use of operator supervised prerecorded call segments.")  Although consumers frustrated and annoyed by soundboard calls filed comments opposing the petition,[8] the FCC has never addressed the question to this day. There is thus no reason to expect that the FCC will ever do so in response to NorthStar's petition.

---

[8] *See Comments of Diana Mey*, CG 02-278 (November 29, 2012), available at https://ecfsapi.fcc.gov/file/7022069805.pdf; *Comments of Joe Shields*, CG 02-278 (November 14, 2012), available at https://ecfsapi.fcc.gov/file/7022056660.pdf; *Comments of Gerald Roylance*, CF 02-278 (November 29, 2012), available at https://ecfsapi.fcc.gov/file/7022069873.pdf

Yet even assuming that the FCC will, at some point, rule on NorthStar's petition, it will almost certainly take years for it to do so.[9]   The Court need only look to the authority Defendants cite in their motion for a stay. In particular, Defendants cite to *Bank v. Indep. Energy Grp LLC*, No. 15-2391, Br. for FCC as Amicus Curiae (doc. no. 97), at 12-16 (2d Cir. Apr. 6, 2016) in which the FCC moved that court to stay the action while it considered interpretation of the term "residential telephone line" in the TCPA.  Dkt 88 at p. 14.  Despite this stay being requested by the FCC nearly three years ago, to date the FCC has made no decision (even though the period for public comment closed in May of 2016).  *Consumer And Governmental Affairs Bureau Seeks Comment On Petition For Declaratory Ruling Filed By Todd C. Bank Regarding The TCPA's Provision Concerning Prerecorded Calls*, 31 FCC Rcd. 2292, 2292.  That is a situation where the FCC may actually be "poised" to make a decision but has not done so even three years later.  Here, on the other hand, there is no indication that the FCC will ever rule on NorthStar's petition.

Four years ago, the Northern District of California addressed the FCC's long delays when it denied a stay of a TCPA action pursuant to the FCC's primary jurisdiction in *Alvarado v. Bay Area Credit Service, LLC*, 2015 WL 224950 (N.D. Cal. 2015).  At that time, the court rejected the movant's representation that an FCC ruling on the meaning of the "automatic telephone dialing system" ("ATDS") definition in the TCPA

---

[9] It is well recognized that "[a]gency decision making often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system."  *Nat'l Communs. Ass'n v. AT&T.*, 46 F.3d 220, 225 (2d Cir. 1995) (citations and quotations omitted).

was "imminent," because the petitions at issue had already been pending before the FCC for nearly two years, and "there is no indication that a decision from the FCC is coming any time soon." *Id.* at * 2.

The Court should note what happened with the FCC's ruling on the ATDS definition after *Alvarado* was decided because it perfectly illustrates the potential for endless delay in this case. The FCC finally issued a ruling interpreting the ATDS definition in July of 2015. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961 (July 10, 2015). The autodialer industry, however, appealed that ruling to the D.C. Circuit and the D.C. Circuit ultimately vacated the FCC's ruling three years after the fact. *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). As a result, the FCC issued a notice stating that it was revisiting the issue and seeking comment on how it should rule. *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 33 FCC Rcd. 4864 (May 14, 2018). Now, nearly six years after the petitions were filed, the FCC is *still* considering the issue. A similar outcome can be expected in this case because even if the FCC rules on NorthStar's petition, that ruling will almost certainly be appealed and this case, and any relief for the class, will be sidelined.

A stay based on NorthStar's January 2, 2019 petition to the FCC will thus be of indefinite length and, based on the above, will likely last far longer than two years. A stay is not appropriate under these circumstances. *See Nat'l Communs. Ass'n v. AT&T*, 46 F.3d 220, 225 (2nd Cir. 1995) ("Since the district court can conclude this matter far more expeditiously, a potential delay of even two years more than outweighs any benefit that

might be achieved by having the FCC resolve this relatively simple factual dispute."); *see also*, *Peralta v. Rack Room Shoes, Inc.*, 2018 WL 6331798, at *8 (E.D.La., 2018) (noting that it could take years for the FCC to issue such guidance.); *Mojica v. Securus Technologies, Inc.*, 2015 WL 429997, at *4 (W.D.Ark. 2015) (holding that the risk that a decision by the FCC "might moot Plaintiff's claims . . . does not outweigh the risk that a stay pending the related proceedings' resolution would simply delay Plaintiff's day in Court for many years longer.")

This indefinite delay will prejudice plaintiff and the members of the certified class. Each year that passes increases the likelihood that class members will move or otherwise change contact information necessary to provide them notice and a meaningful opportunity to participate or decline participation in the class. Likewise, evidence will vanish with time. *See Sanaah v. Howell*, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed.") A stay will not serve judicial economy in this case.

## VI.        Conclusion

For the foregoing reasons, Defendants Motion to Stay this matter pending an opinion by the FCC should be denied.

Respectfully submitted,

**HUMPHREYS WALLACE HUMPHREYS, P.C.**


By:   /s/ Paul Catalano
 David Humphreys, OBA #12346
 Luke Wallace, OBA #16070
 Paul Catalano, OBA #22097
 9202 S. Toledo Avenue
 Tulsa, OK  74137
 (918) 747-5300 / (918) 747-5311 (Fax)
 david@hwh-law.com
 luke@hwh-law.com
 paul@hwh-law.com

 and

 Keith J. Keogh, IL #6257811, *Pro Hac Vice*
 Timothy J. Sostrin, IL #6290807, *Pro Hac Vice*
 KEOGH LAW LTD
 55 W Monroe St, Ste 3390
 Chicago, IL  60603
 (312) 726-1092 / (312) 726-1093 –fax
 keith@keoghlaw.com
 tsostrin@keoghlaw.com
 **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2019, I caused the foregoing document to be electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Brian R. Matula                              brmatula@gpmlegal.net
GUM PUCKETT MACKECHNIE COFFIN & MATULA, LLP

Daniel S. Blynn                              dsblynn@Venable.com
Stephen R. Freeland                          srfreeland@Venable.com
Elizabeth C. Rinehart                        lcrinehart@venable.com
VENABLE, LLP
*Attorneys for Defendant NorthStar Alarm Services, LLC*

Eric S. Allen                                eric@allenlawyer.com
ALLEN MITCHELL & ALLEN, PLLC

Anne E. Zachritz                             anne@resolutionlegal.com
RESOLUTION LEGAL GROUP
*Attorneys for Defendant Yodel Technologies, LLC*

                              _/s/ Paul Catalano_____