# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ROBERT BRAVER, for himself and )
all individuals similarly situated, )
                                                  )
      Plaintiff,                     )
                                                  )    Case No. CIV-17-0383-F
-vs-                            )
                                                  )
NORTHSTAR ALARM SERVICES, )
LLC, et al.,                     )
                                                  )
     Defendants.                )

## ORDER

Defendant Yodel Technologies LLC moves the court to decertify the class or reconsider summary judgment. Doc. no. 170. Plaintiff Robert Braver has responded, objecting to the motion. Doc. no. 179. Yodel filed a reply brief. Doc. no. 186.

The court begins with some general comments about Yodel's motion.

Many of Yodel's arguments are premised on Yodel's contention, made throughout its moving papers,[1] that this court's orders effectively hold that all calls

---

[1] *See*, *e.g.*, doc. no. 170, p. 7 of 32 ("No judicial precedent, FCC decision, or legislative history, … supports treating soundboard technology as categorically covered by the TCPA's prerecorded-call provision"); p. 9 of 32 ("Even if *some* soundboard calls might qualify as 'prerecorded messages,' the summary-judgment record here did not support the conclusion that *all* soundboard calls implicated Congress' concern with machine-driven rather than human-led communications"); p. 21 of 32 "("Unless the use of *any* soundboard technology is deemed sufficient to trigger the TCPA—which…would violate the First Amendment—then this class cutoff bears little or no relationship to the factors relevant to the outer limits of TCPA coverage…."); p. 28 of 32 ("Given the individualized and disputed issues discussed above, if this

using any soundboard technology are categorically prohibited under 47 U.S.C. §227(b)(1)(B). Based on that premise, Yodel argues that absent decertification or reconsideration of the summary judgment order, the court's orders render §227(b)(1)(B) unconstitutional under the First Amendment.

Yodel's premise is demonstrably incorrect. As explained in more detail later in this order, the court's orders do not hold, effectively or otherwise, that all uses of soundboard technology are prohibited by 47 U.S.C. §227(b)(1)(B). The court's summary judgment order established the nature of Yodel's soundboard technology as used by Yodel to deliver the calls in question in this case. For example, the order found that Yodel's soundboard agents, located in a call center in India, followed a script which instructed them to press buttons in a certain order, thereby delivering prerecorded audio clips to the called party. The order further found there was no dispute that calls were made to residential phone lines, and that every initial call to class members began with the soundboard agent playing a pre-recorded message without the prior consent of the called parties.

Based on these and other findings, it was clear that all class members received at least one soundboard call that violated the prohibition set forth in 47 U.S.C. §227(b)(1)(B).[2] The court determined "There is no genuine issue with respect to the fact that Yodel initiated telephone calls to residential telephone lines using a prerecorded voice to deliver a message without the prior express consent of the called party." Doc. no. 139, p. 13 of 31. The court ruled in favor of Braver and the class, and against Yodel, on count one. Accordingly, Yodel's arguments at this stage–which contend that the court ruled too broadly and should have taken into

---

class is to remain certified, it is likely to rest on a *per se* holding that *any* use of a pre-recorded voice by a live agent (no matter the degree of interactivity) triggers automatic statutory liability.").

[2] Section 227(b)(1)(B) prohibits initiating any telephone call to any residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party (with exceptions not material here).

account what Yodel describes as the varying levels of "human-driven interactivity" demonstrated in some of the calls–are rejected. Yodel's motion to decertify will be denied.

As for Yodel's alternative request that the court reconsider its order on summary judgment, the court will make a minor amendment to footnote 30, for the sake of accuracy. In all other respects, Yodel's request for reconsideration will be denied.

Standards

Rule 23(c)(1)(C) provides that an order which grants or denies class certification may be altered or amended before final judgment. Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation. Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). This flexibility enhances the usefulness of the class-action device. *Id.* Actual, not presumed, conformance with the requirements of Rule 23(a) remains indispensable. *Id.* Accordingly, reasons given for altering certification orders, which are many and varied, have included, among other things, matters such as lack of numerosity, lack of commonality, or the inadequacy of the named plaintiff as class representative. Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co., 2008 WL 11338389, *2 (W.D. Okla. 2008), citation omitted. Decertification may also be appropriate where new facts have been developed to justify such a redetermination. *Id.*, citation omitted. This court presumes the burden is on Braver to show that the original certification remains appropriate under the requirements of Rule 23.[3] If that

---

[3] District courts within this circuit have held that when faced with a motion to decertify, the court should place the burden for maintaining the class certification on the party who obtained certification in the first place. *See*, *e.g.,* Sibley v. Sprint Nextel Corp., 315 F.R.D. 642, 651 (D. Kan. 2016). Other courts have found the burden rests on the movant who seeks decertification, as the party who seeks to show that the court mistakenly maintained class certification. *See*, *e.g., id.* at 651, n.10, citing Day v. Celadon Trucking Servs., Inc., 827 F.3d 817 (8th Cir. 2016).

3

is incorrect and the burden should be on Yodel to show that decertification is appropriate based on the record as it now stands, the result stated in this order (denial of decertification) would obviously be the same.

Although the Federal Rules of Civil Procedure do not recognize a "motion to reconsider," the court has inherent authority to reconsider its interlocutory rulings and it should do so where error is apparent. Warren v. American Bankers Ins. of Florida, 507 F.3d 1239, 1243 (10th Cir. 2007). That said, reconsideration is generally not appropriate when the motion advances arguments previously addressed by the court, or when the motion advances new arguments or supporting facts which were available and could have been presented at the time of the original motion. Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). On the other hand, reconsideration may be warranted based on an intervening change in the controlling law, new evidence which was previously unavailable, or the need to correct clear error or prevent manifest injustice. *Id*.

### The Motion to Decertify

Yodel argues that "Determinations crucial to the court's initial class decision order are now at odds with the record on summary judgment." Doc. no. 170, p. 19 of 32 ("Argument" proposition 1.B). Yodel states that "As the record stands now, three principal inconsistencies in the Orders show the incongruity of the current class." *Id*., p. 20 of 32.

1. The first asserted inconsistency appears in footnote 30 of the summary judgment order. The footnote begins by quoting legislative history of the TCPA which expresses the congressional concern that:

> These automated calls cannot interact with the customer except in preprogrammed ways….

Doc. no. 139, p. 11 of 13, n.30. The footnote references defendants' argument that "soundboard calls do not offend these congressional concerns," then states:

> But the undisputed audio recording of the initial Braver call shows that soundboard calls "cannot interact with the customer except in preprogrammed [not to mention meaningless] ways," which is one of the congressional concerns cited above.

*Id*. The footnote then quotes illustrative excerpts from the Braver call.

Yodel argues that the "But" sentence quoted immediately above is erroneous and belied by the record as a whole. Yodel argues that the experience of class members varied because some class members interacted directly with the soundboard agent or with another live agent who joined the call, and because there was a wide range of interactivity demonstrated in the calls. *See*, *e.g.*, doc. no. 186, p. 4 of 12 (bullet points).

The court agrees with Yodel that the objected-to sentence in footnote 30 of the court's order on summary judgment is erroneous. It is too broad. As currently written, the sentence indicates that soundboard calls can never interact with the customer except in preprogrammed and meaningless ways. What the court should have said in footnote 30 is this:

> But the undisputed audio recording of the initial Braver call shows that, in that instance, the soundboard call did not "interact with the customer except in preprogrammed [not to mention meaningless] ways," which is one of the congressional concerns cited above.

Accordingly, footnote 30 of the order on summary judgment is hereby **AMENDED** to substitute the corrected version of the "But" sentence (the version which appears immediately above) for the original version of that sentence.

That correction aside, there is a larger point to be made. Footnote 30, in its corrected or uncorrected form, is not in any sense necessary to the court's ruling that Braver and the class are entitled to summary judgment on count one. Footnote 30 is an aside, intended to show that the transcript of the Braver call raises concerns

consistent with those expressed by Congress when it considered the TCPA. That observation is relegated to a footnote because it is immaterial to the outcome. As stated in the body of the summary judgment order:

> This legislative history, however, does not limit the plain language of § 227(b)(1)(B), which says nothing about any requirement that there be no human interaction in order for §227(b)(a)(B) to apply. <u>Even more fundamentally, the language of § 227(b)(1)(B) is clear, and there is no reason to resort to legislative history to determine its meaning.</u> *See*, Edwards v. Valdez, 789 F.2d 1477, 1481 (10th Cir. 1986) ("When the meaning of a statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent").

Doc. no. 139, pp. 11-12 of 31 (emphasis added). As the court ruled at the summary judgment stage and as it reiterates now, the language of §227(b)(1)(B) is plain, and there is no reason to resort to legislative history to determine its meaning.

2. Yodel next argues that the certification order is inconsistent with the record because it states, "The technology in issue, called avatar or soundboard technology, involves humans who are purportedly listening in and who attempt to press computer buttons to generate a prerecorded response or a conversation which would be consistent with whatever the called party might have said." Doc. no. 72, p. 11 of 27 (certification order, citing doc. no. 67, Tr., pp. 46-47); quoted (in part) by Yodel at doc. no. 170, p. 21 of 32. Yodel argues that the references in this statement to humans who are "*purportedly listening in* and who *attempt to press computer buttons*" are inconsistent with the record as it now stands. Doc. no. 170, p. 21 of 32 (emphasis in Yodel's motion). Yodel argues "[t]he record now shows that Yodel soundboard agents—while by no means perfect—did in fact utilize the technology to have human-driven conversations." *Id*.

The court rejects this argument for decertification. There is no inconsistency between the court's statement in the certification order (that soundboard technology

6

involves humans who are purportedly listening in and who attempt to press computer buttons to generate a prerecorded response or conversation which would be consistent with whatever the called party might have said) and the evidence cited by Yodel in its motion to decertify for the purpose of showing that the agents did, in fact, listen in to calls, one call at a time, and did press buttons to have what Yodel calls "human-driven conversations."

Furthermore, Yodel's argument that some of the soundboard operators generated prerecorded responses which were consistent with whatever the called party had said, is ultimately immaterial to the court's ruling in favor of Braver and the class at the summary judgment stage. As found in the order on summary judgment, "every initial call began with the soundboard agent (Yodel's agent) playing the first recording" (doc. no. 139, p. 7 of 31); "Yodel did not obtain consent from the called parties prior to initiating calls to plaintiff and the class." *Id*. at p. 9 of 31. These findings (together with others, including a finding that calls were made to residential telephone lines) established a violation of §227(b)(1)(B) based on the first recording played in the initial call made to class members. Thus, all class members received a call from a Yodel soundboard agent that violated §227(b)(1)(B) –a conclusion which applies without regard to the level of interaction Yodel argues is demonstrated in certain calls.

3. Lastly with respect to purported inconsistencies between this court's orders and the record, Yodel singles out the certification order's rejection of Yodel's argument "that factual variations in the calls raise individualized issues," and the statement in the certification order that "[b]ased on the evidence heard to date [*i.e*. the date of the certification order], it appears that all of the calls at issue delivered a prerecorded soundboard message." Doc. no. 72, p. 12 of 27 (certification order); quoted by Yodel at doc. no. 170, p. 21 of 32. What Yodel appears to be arguing in this part of its motion is that these statements are inconsistent with the record "Unless

7

the use of *any* soundboard technology is deemed sufficient to trigger TCPA liability—which…would violate the First Amendment…." Doc. no. 170, p. 21 of 32. The court rejects this argument for decertification. As stated at the beginning of this order, the court has never ruled that a TCPA violation is triggered simply by using "any soundboard technology." What the court has consistently found is that every initial call to the class began with the soundboard agent playing the first recording, to which consent had not been given, and that these and other facts (such as the fact that calls were made to residential telephone numbers) show that class members received a call that violated §227(b)(1)(B).

In addition, Yodel's argument that this court's rulings render §227(b)(1)(B) unconstitutional under the First Amendment relies on an incorrect interpretation of Moser v. FCC, 46 F.3d 970 (9th Cir. 1995). Yodel argues that in Moser, the Ninth Circuit upheld the constitutionality of §227(b)(1)(B) because the statute distinguishes between fully[4] "automated calls and calls that incorporated a live speaker," an interpretation which rendered the TCPA narrowly tailored and thereby avoided a first amendment problem. Doc. no. 170, p. 11 of 32. Yodel argues that the calls in question in this case were not fully automated and incorporated a live speaker, so that the calls fall outside the ban of §227(b)(1)(B) as interpreted and upheld in Moser. Moser, however, says nothing about § 227(b)(1)(B) reaching only fully automated calls. Nor does Moser say anything about § 227(b)(1)(B) not reaching calls that "incorporate" (Yodel's word) a live speaker.

---

[4] Although Yodel does not use the word "fully" in the sentence quoted in the text, it is clear from other parts of Yodel's brief that Yodel interprets Moser as regulating only "fully automated" calls. *See*, *e.g.*, doc. no. 170, p. 11 of 32 (heading, proposition "B," referring to "Moser's distinction between fully automated and human-introduced prerecorded messages"), p. 12 of 32 ("Moser's interpretation of § 227(b)(1)(B) to cover fully automated calls is consistent with the FCC's description of that section.").

What <u>Moser</u> *did* do was uphold the statutory ban of §227(b)(1)(B) after concluding the statute left many alternative channels of communication open. Those alternative channels of communication included: "[1] the use of taped messages introduced by live speakers [2] or taped messages to which consumers had consented, as well as [3] all live solicitation calls." <u>Moser</u>, 46 F.3d at 975 (numbering added).[5] The undersigned's ruling in this case that every initial call began with an unconsented-to prerecorded message, means members of the class received at least one soundboard call which did not qualify as permitted under any of the channels of communication specifically left open by <u>Moser</u>'s interpretation of the statute.[6] Nothing in this court's orders limits Yodel's ability to generate leads for its clients using any of the methods left open under <u>Moser</u>. This court has not interpreted §227(b)(1)(B) in a way that renders the statute unconstitutional under the First Amendment or under the rationale of <u>Moser</u>.

After setting out the argued-for inconsistencies between the court's orders and the record, Yodel argues that "[t]hese inconsistencies warrant reexamination of the initial nationwide class determination on multiple grounds." Doc. no. 170, p. 22 of 32. Yodel argues that commonality and predominance are not satisfied based on varying levels of interactivity in the calls. Yodel also argues that Mr. Braver is not

---

[5] Another part of <u>Moser</u> uses slightly different language and adds the observation that automated calls to most businesses are permitted under the statute. As stated there, "Under the statute, prerecorded messages may be used only [1] if a live operator introduces the message or [2] if the consumer consents. [3] All live solicitation calls, as well as automated calls to most businesses, are permitted." 46 F.3d 970, 972 (numbering added). Yodel argues that category one "absolves Yodel's technology…." *See*, doc. no. 186, p. 8 of 12. The court disagrees. The soundboard operator was (obviously) alive when he pushed a button to deliver a prerecorded message, but there was no live operator who introduced the prerecorded message.

[6] To the extent that Yodel's motion argues the soundboard calls were live solicitations within the meaning of <u>Moser</u>, the court rejects that argument. The fact that the soundboard operator was alive does not make the call a "live" (*i.e.* not prerecorded) solicitation.

a typical or adequate class representative because the record shows that calls to others in the class were more interactive.[7] These arguments are rejected as grounds for decertification. The varying ability of different soundboard operators to mimic live human-to-human conversation as a call proceeded is not a factor that changes the court's ruling in favor of Braver and the class on count one.

Yodel next argues that the varying level of interactivity reflected in certain calls shows the superiority requirement is not met. The court rejects this argument for the same reasons that it rejects Yodel's arguments regarding predominance, commonality and typicality. Yodel makes one more argument regarding superiority, however, which needs to be separately addressed. Yodel argues that the superiority requirement is not met in light of the potential for a disproportionate damages award which exists if this action remains certified as a class action. Yodel argues the potential for disproportionate damages violates due process. The court rejects this argument. While it is possible that damages may eventually be reduced by the court,[8] the potential for disproportionate damages is not, in the circumstances of this case, a reason to decertify.[9]

---

[7] In this part of its motion Yodel provides six links to audio recordings of certain calls. Doc. no. 170, pp. 25-26 of 32. The court has tried to access these recordings but has been unable to do so. (The court's IT staff advises that the links are no longer available.) The court's inability to access the links makes no difference to the outcome; it is mentioned only so that Yodel will be aware that the links didn't work and the court was consequently unable to listen to the recordings.

[8] Yodel (and NorthStar) have moved separately for reduction of damages. Nothing stated in this order should be construed as indicating how the court might rule on that issue.

[9] *See*, Circle v. Jim Walter Homes, Inc., 535 F.2d 583, 589 (10th Cir. 1976) (reversing district court's refusal to certify class action; "the reason given by the [district] court that the damages would be prohibitively high or in his words, annihilating[,] is not a valid basis for refusal to certify"); Parker v. Time Warner Entertainment Co., 331 F.3d 13, 22 (2d Cir. 2003) ("[I]t may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that [disproportionate] effect and reduce the aggregate damage award"); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) ("An award that would be

For the reasons stated in this order, all of Yodel's arguments for decertification are rejected.

The Motion to Reconsider

Lastly, Yodel argues that if the court declines to decertify the class, the court should reconsider its ruling on summary judgment and modify that ruling to avoid raising doubts about the constitutionality of the TCPA under the First Amendment and Moser. This argument is rejected. The court's ruling in favor of Braver and the class at the summary judgment stage is pinned to the undisputed facts of this case, and there is nothing about that ruling which renders §227(b)(1)(B) unconstitutional under the First Amendment or the rationale of Moser. For the sake of accuracy, this order amends one sentence in footnote 30 of the summary judgment order. Aside from that, no reconsideration or modification of the summary judgment order is necessary or appropriate. Accordingly, with one minor exception, Yodel's request for reconsideration of the court's summary judgment order will be denied.

Conclusion

After careful consideration, Yodel's motion seeking decertification of the class is **DENIED**.

Yodel's alternative request for reconsideration of the court's order on summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Yodel's motion to reconsider is **GRANTED** to the limited extent that the court has substituted a corrected version of a sentence in footnote 30 of the court's order on summary judgment. *See* p. 5, above. The clerk is **DIRECTED** to add the following statement to the docketed description of doc. no. 139: "Footnote 30 has been

---

unconstitutionally excessive may be reduced [citation omitted] but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it.").

amended as set out at p. 5 of doc. no. 199." In all other respects, Yodel's request for reconsideration of the summary judgment order is **DENIED**.

IT IS SO ORDERED this 5th day of November, 2019.

_/s/ S.P. Friot_
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

17-0383p047.docx