## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT H. BRAVER, for himself and all )
individuals similarly situated, )
                                     )
             Plaintiff, )
                                      )
v. )   Case No. 5:17-cv-00383-F
                                       )
NORTHSTAR ALARM SERVICES, LLC, a )
Utah Limited Liability Company, )
YODEL TECHNOLOGIES, and )
DOES 2-10, UNKNOWN INDIVIDUALS, )
                                       )
             Defendants. )

## DEFENDANT NORTHSTAR ALARM SERVICES, LLC'S PROPOSAL
## AS TO SETTLEMENT CY PRES BENEFICIARY

As stated in Plaintiff's otherwise unopposed motion for preliminary approval of the settlement agreement (doc. no. 252, at 10), NorthStar opposes Plaintiff's suggested *cy pres* beneficiary, the National Consumer Law Center ("NCLC"), and, instead, proposes as the *cy pres* beneficiary the BBB Institute for Marketplace Trust (the "BBB Institute"), which is the 501(c)(3) foundation of the Better Business Bureau ("BBB"),[1] with the funds earmarked for TCPA-related consumer education and related work.  Should the Court find that both organizations would be appropriate *cy pres* beneficiaries, NorthStar does not oppose the BBB Institute and NCLC splitting equally the monies, if any, remaining in the settlement fund after any second distribution.

The BBB Institute, like NCLC, is a general consumer protection organization.[2] The BBB Institute's mission "is to educate and protect consumers, promote best practices for businesses, and solve complex marketplace problems."[3]  It is focused on, among other things, improving marketplace conditions by expanding consumer education to avoid advertising and marketing scams, and encouraging business best practices.[4]  Indeed, it

---

[1]    *See* October 19, 2020 Letter from Melissa Trumpower (Exh "1" hereto).

[2]    The NCLC provides "free civil litigation representation, education, and advocacy to low income people on consumer issues."  *Wood v. J Choo USA, Inc.*, 2017 WL 4304800, at *6 (S.D. Fla. May 9, 2017) (splitting *cy pres* distribution between NCLC and two legal aid societies in FACTA litigation); *Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, at *9-10 (C.D. Cal. June 17, 2019) (designating NCLC as the *cy pres* beneficiary in a FCRA settlement); *Moukengeshcare v. Ettman, Ettman & Cooper, PC*, 2019 WL 5204809, at *2 (E.D.N.Y. Oct. 15, 2019) (same, but for litigation under the FDCPA Act); *McKnight v. Uber Techs, Inc*, 2019 WL 3804676, at *3 (N.D. Cal. Aug. 13, 2019) (same, but for various consumer protection claims).

[3]    *See* Exhibit 1.

[4]    *See id.*

"provide[s] educational programs for a wide range of consumer groups, including the military, veterans, students, seniors, and many others."[5]  It and the BBB have published TCPA-related articles educating consumers on their rights and how to avoid robocall scams; and the BBB Institute is in the process of developing a TCPA education curriculum.[6]   As "a non-partisan, neutral organization,"[7] the BBB Institute has been named *cy pres* beneficiary in numerous other marketing- and consumer protection-related cases. *See, e.g.*, *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603, doc. no. 95, at 20 (N.D. Cal. Oct. 3, 2019) ("[the BBB Institute] will indirectly benefit class members who did not file a claim and are in line with the objectives of the consumer protection statutes underlying plaintiff's claims"); *Kearney v. Equilon Enter's LLC*, No. 3:14-cv-00254, doc. no. 138, at 4 (D. Ore. Oct. 25 2016); *Beck-Ellman v. Kaz*, No. 3:10-CV-02134, doc. no. 90 (S.D. Cal. June 11, 2013).

In this case, Plaintiff has alleged an unlawful form of telemarketing under the TCPA, a consumer protection statute, and repeatedly harped on the purportedly false and misleading content of Yodel's soundboard calling scripts throughout his briefs.  The Court, too, has expressed its strong concerns regarding the content of Yodel's scripts:

> [T]he court rejects the defendants' suggestion that the actual content of the robocall scripts is irrelevant to a reckoning of their culpability. . . . It is one thing to have a technical violation [of the TCPA], committed by means of communications consisting of substantive content that was truthful and otherwise benign.  It is another thing to systematically violate the TCPA by means of communications that were plainly and materially deceptive.

---

[5]   *See id.*

[6]   *See id.*

[7]   *See id.*

Doc. no. 200 at 4.   Assisting consumers in avoiding false and deceptive marketing, such as that allegedly at issue in this case, while helping businesses comply with the law, is squarely within the BBB Institute's wheelhouse.   Further, any award of residual settlement funds in this case to the BBB Institute will be earmarked for TCPA-related purposes, *see* Exhibit 1, which is appropriate in TCPA class action settlements.  *See, e.g.*, *Melito v. Am. Eagle Outfitters, Inc*., No. 1:14-cv-02440, doc. no. 319, at 4 (S.D.N.Y. Sept. 8, 2017) (approving NCLC and the National Foundation for Credit Counseling as the *cy pres* recipients receiving an equal distribution, with the funds to NCLC being earmarked for TCPA-related work).  The BBB Institute is perfectly suited to be the *cy pres* beneficiary in this case.

By contrast, NCLC is the *de facto* lobbying arm for Class Counsel.  NCLC vociferously opposed NorthStar's January 2019 FCC petition regarding soundboard technology.[8]  NCLC also is the frequent *cy pres* beneficiary in Class Counsel's TCPA settlements, and has received nearly $1 million from just two of Class Counsel's numerous settlements over the past few years alone specifically "earmarked for work associated with the FCC."  *See Leung v. XPO  Logistics, Inc*., No. 1:15-cv-03877, doc. no. 169 (N.D. Ill. Jan. 22, 2019) (NCLC stood to receive up to $268,127 after the court questioned the propriety of both Class Counsel being invited to join NCLC's leadership (Partner's Council) and NCLC's intention to publicize its receipt of the *cy pres* award); *Willett v. Redflex Traffic Sys., Inc*., No. 1:13-cv-01241, doc no. 271 (D.N.M. May 2,

[8]      *See*      https://www.nclc.org/images/pdf/robocalls/group-comments-opp-northstar-

2017) (awarding NCLC approximately $640,000 from a $2.25 million fund from which claims paid to class members totaled only about $291,616).

It is not surprising that Plaintiff urges the Court to name NCLC as the *cy pres* beneficiary here given NCLC's recent claims in another one of Class Counsel's cases that, as of May 2018, it had made 103 pro-TCPA plaintiff filings at the FCC, including many relating to cases brought by Class Counsel. *Martinez v. Medicredit, Inc*., No. 4:16-cv-1138, doc. no. 103-1 (E.D. Mo. May 9, 2018). Settlement funds should not be used to support one party's counsel's agenda. *See, e.g.*, *S.E.C. v. Bear, Stearns & Co. Inc*., 626 F. Supp. 2d 402, 415 (S.D.N.Y. 2009) ("many cy pres distributions are channeled to organizations that support the work done by plaintiffs' attorneys, thus, indirectly benefiting the plaintiffs' attorneys" and expressing concern that "the specter of judges and outside entities dealing in the distribution and solicitation of large sums of money creates an appearance of impropriety"); *Dennis v. Kellogg Co*., 697 F.3d 858, 867 (9th Cir. 2012) ("*Cy pres* distributions present a particular danger" that incentivizes "favoring pursuit of self-interest rather than the class's interests . . . ."). Further, one FCC Commissioner has criticized NCLC as the source of "***misleading*** narrative[s about the TCPA] being peddled by certain groups purporting to represent consumer interests." FCC, *Remarks of FCC Commissioner Michael O'Rielly*, at 3 (May 16, 2019) (emphasis added).[9] Just a few months ago, the FCC panned NCLC for taking the outrageous position that the TCPA applies to and was intended to stop every type of call, hard stop.[10]

---

alarm-services-mar2019.pdf (last accessed Oct. 13, 2020).

[9]    https://docs.fcc.gov/public/attachments/DOC-357496A1.pdf  (last  accessed  Oct.

Plaintiff is likely to rely on *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185 (N.D. Ill. 2018) to support his selection of NCLC, but *Leung* underscores why NCLC is not an appropriate *cy pres* beneficiary in this case. There, NCLC was named the *cy pres* beneficiary despite an objection to Class Counsel's ties to the organization. However, the court stressed that its decision overruling the objection was based, in large part, because "Keogh Law ***itself***" – Plaintiff's counsel here – was "not a member of the [NCLC's] Partners Council; the worst [the objector] can say is that Keogh Law has worked with attorneys who are members of the Council. Nothing about these connections suggests that Class Counsel is trying to 'curry favor' by designating NCLC as a cy pres recipient." *Id.* at 206 (emphasis in original). Since *Leung* was decided, Keogh Law has become an active member of NCLC's "leadership" and now sits on the organization's Partners Council. *See* NCLC, *Leadership for NCLC* (https://www.nclc.org/about-us/leadership.html) (last accessed June 5, 2020).[11]

For the foregoing reasons, NorthStar respectfully requests that the Court select the BBB Institute as the *cy pres* beneficiary in this case, either on its own or equally splitting any remaining distribution with NCLC.

---

13, 2020).

[10]     FCC, Declaratory Ruling, *In re P2P Alliance Pet. for Clarification*, No. 02-278 ¶ 12 (June 25, 2020) (https://docs.fcc.gov/public/attachments/DA-20-670A1.pdf) (last accessed June 29, 2020).

[11]     Humphreys Wallace Humphreys, PC – Plaintiff's other law firm in this case – also has ties to NCLC, being described by that organization as a long-time "NCLC supporter." *See* NCLC, *The [NCLC] Honors David Humphreys and Luke Wallace* (https://www.nclc.org/about-us/2017-vern-countryman-award.html) (last accessed Oct. 13, 2020); *see also* Luke Wallace Decl. (doc. no. 255-1) ¶ 9.

Dated: October 19, 2020          Respectfully submitted,

  /s/ *Daniel S. Blynn*
Daniel S. Blynn, *Pro Hac Vice*
Stephen R. Freeland, *Pro Hac Vice*
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000 / (202) 344-8300 (Fax)
dsblynn@venable.com
srfreeland@venable.com

Elizabeth C. Rinehart, *Pro Hac Vice*
VENABLE, LLP
750 E Pratt St, Ste 900
Baltimore, MD  21202
(410) 528-4646 / (410) 244-7742 (Fax)
lcrinehart@venable.com

Brian R. Matula
Oklahoma Bar No. 14778
GUM, PUCKETT, MACKECHNIE,
COFFIN & MATULA, LLP
The Hightower Building
105 N. Hudson Avenue, Suite 900
Oklahoma City, OK 73102
(405) 488-1212 / (405) 488-1216 (Fax)
brmatula@gpmlegal.net

*Attorneys for Defendant*
*NorthStar Alarm Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2020, a copy of the foregoing document was served upon all counsel of record via CM/ECF.

 */s/ Daniel S. Blynn*
Daniel S. Blynn

*An Attorney for Defendant NorthStar Alarm Services, LLC*