# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  ROBERT H. BRAVER, for himself and all individuals similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:17-cv-00383-F |
| 1.  NORTHSTAR ALARM SERVICES, LLC, a Utah Limited Liability Company,<br>2.  YODEL TECHNOLOGIES, LLC, and<br>3.  DOES 2-10, UNKNOWN INDIVIDUALS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1

II.   Nature of the Case .............................................................................................. 2

III.  Settlement and Administration ........................................................................... 5

     A.   Class Definition. ......................................................................................... 5

     B.   Structure of the Settlement Fund. ............................................................... 6

     C.   Individual Payments..................................................................................... 8

     D.   Additional Relief. ........................................................................................ 8

     E.   Release. ........................................................................................................ 9

     F.   Compensation for the Class Representative................................................. 9

     G.   Payment of Attorneys' Fees and Costs ...................................................... 10

     H.   *Cy Pres* Distribution. ................................................................................ 10

     I.   Notice of Settlement and The Class's Response ........................................ 11

IV.   Final Approval is Warranted............................................................................. 14

  a.   The Class Was Adequately Represented.......................................................... 15

  b.   The Settlement Was Negotiated at Arms Length ............................................. 16

  c.   The Relief Provided for the Class is Adequate................................................. 17

    1.   The Costs, Risks, And Delay Of Trial And Appeal ................................... 19

    2.   The Settlement Provides for Effective Distribution of Relief.......................... 20

    3.   The Proposed Fee Award, and timing of Payment, Support Approval ............ 21

    4.   There are No Rule 23(e)(3) Agreements........................................................... 22

  d.   The Settlement Treats Class Members Equitably Relative to Each Other............ 22

  e.   The Parties Support the Settlement as Fair and Reasonable ................................ 22

V.   The Presence of a Governmental Participant......................................................... 23

VI.   Conclusion ........................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012) ......................... 13

*Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 211399 (N.D. Ill. December 9, 2019).................................................................................................. 4

*Basin Oil & Gas Lease Antitrust Litig.*, 2019 U.S. Dist. Lexis 75384 (W.D. Okla. April 25, 2019)................................................................................................................ 21

*Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *15 (N.D. Cal. 2015).......... 13

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015)...................................... 13

*Blanco v. Xtreme Drilling & Coil Servs.*, 2020 U.S. Dist. LEXIS 126155 (D. Colo. July 17, 2020).................................................................................................................. 21

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ............................................................................................................................... 12

*Cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015).......................... 18

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455 (10th Cir. 2018) ..................................................................................................... 10

Cox v. Sprint Commc'ns Co. L.P., No. 6:10-CV-01262-KGG, 2012 WL 5512381 (D. Kan. Nov. 14, 2012)............................................................................................... 21

*Ferrell v. Buckingham Prop. Mgmt.*, 2020 U.S. Dist. LEXIS 9919 (E.D. Cal. January 17, 2020) ..................................................................................................................... 22

*Garner v. State Farm Auto Ins. Co.*, 2010 WL 1687832 (N.D. Cal. April 22, 2010)..... 24

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994)......................................................... 21

*Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449 (10th Cir. 1969)............................ 14

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000)................. 23

*In re Samsung Top-Load Washing Mach. Mktg.*, 2020 U.S. Dist. LEXIS 90759 (W.D. Okla. May 22, 2020) ............................................................................................. 20

*In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013).................................................................................................................... 19

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008) .............. 16

*Isby v. Bayh*, 75 F.3d 1191 (7th 1996) ...................................................................... 19

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.3d 322 (10th Cir. 1984)................................. 14

*Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ................................................ 12, 13

*Kolnek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015)............................................. 13

*Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012).................................................................................................................. 19

*Lee v. Global Tel*Link Corp.*, 2018 U.S. Dist. LEXIS 163410 (C.D. Cal. September 24, 2018) ..................................................................................................................... 13

*Lipuma v. American Express Co.*, 406 F.Supp.2d 1298 (S.D. Fla. 2005) ........................ 2

*Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
(S.D. Cal. Feb. 5, 2013) ........................................................................... 19

*Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002)...................... 23

*O'Dowd v. Anthem, Inc.*, 2019 U.S. Dist. LEXIS 153610 (D. Colo. September 9, 2019)
....................................................................................................... 22

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 377-78, 1384 (S.D. Fla. 2007) ............. 12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002).................... 14

*Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) 13

Steinfeld v. Discover Fin. Servs., 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D.
Cal. Mar. 31, 2014)................................................................................. 18

*Warnick v. DISH Network LLC*, 301 F.R.D. 551 (D. Colo. 2014)................................... 4

*Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016)
....................................................................................................... 18

**Statutes**

47 C.F.R. § 64.1200(a)(3) ............................................................................ 3

47 U.S.C. § 227(b)(1)(B)............................................................................... 3

47 U.S.C. § 227(b)(2)................................................................................... 3

47 U.S.C. § 227(b)(3)(B)............................................................................... 3

**Other Authorities**

*Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*,
80 F. Supp. 3d 781 (N.D. Ill. 2015)............................................................. 18

Eisenberg & Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation:
Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004) ........................... 2

Fed. R. Civ. P. 23(e)............................................................................ 14, 18

## I.     Introduction

Braver and NorthStar Alarm Services, LLC ("NorthStar") (collectively the "Parties") reached an agreement to resolve the class's claims against NorthStar (the "Agreement")[1] (ECF No. 252-1) after three years of hard fought litigation, where Plaintiff obtained both class certification and summary judgment for the class, where there were proceedings before the Tenth Circuit and the Federal Communications Commission, and where co-defendant Yodel Technologies filed bankruptcy.

On June 9, 2020, the Court preliminarily approved the Agreement. *ECF No. 254*. In doing so, the Court preliminary found the settlement was sufficiently fair, reasonable, and adequate to merit notice be sent to the class. *Id.* p. 2.

Per the Court-approved notice plan, direct notice was mailed to each of the class members last known address, plus additional addresses obtained through a search of public records where mail was returned as undeliverable. *ECF No. 252-1* at p. 20; Kurtzman Carson Consultants (KCC) *Decl.* at ¶¶ 4-5.  In order to provide the best notice practicable, and upon agreement of the parties, additional notice was provided via social media advertisements, targeted to users associated with a telephone number in the class list. *KCC Decl.* at ¶ 6.  Even with this robust notice, not a single class member has objected to the settlement. *Id.* at ¶ 11.  Only nine (9) people have opted out in response to the notice of settlement– less than only .01% of the class. *Id.* at ¶ 10.  Plaintiff respectfully submits

---

[1] Defendant Yodel Technologies, LLC ("Yodel") is not a party to the Agreement, and the claims asserted against Yodel are not resolved by the Agreement and remain pending. *ECF No. 254* at p. 2.

that the lack of opposition to the settlement underscores the value of the Settlement for the class. *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005) ("low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.")[2]  Finally, no governmental entity objected to the settlement after receiving the required CAFA notice. *Blynn Decl.* at ¶ 11. Thus, there is no opposition to this settlement.

Under the Agreement, each class member who submitted a valid claim form will receive a *pro rata* share of the $1.85 million dollar settlement fund in the amount of approximately $182.00, assuming the Court grants the pending motion for attorneys' fees, costs, and incentive award. *ECF No. 255*.  This is a great result, especially considering NorthStar's financial condition. *See infra*.  In addition, the Agreement provides substantial injunctive relief that benefits the class by enjoining NorthStar from initiating any telephone call to any telephone line that delivers a prerecorded message and/or using soundboard technology to deliver a prerecorded message where the principal purpose of the telephone call is advertising or marketing NorthStar's products or services, unless the called party has provided prior express written consent to receive such calls.

Plaintiff therefore respectfully moves the Court to finally approve the settlement and enter the final approval order and judgment attached hereto as *Exhibits 1 and 2*.

## II.    Nature of the Case

---

[2] For a class this size, the Court could expect about ten objections (extrapolating the median 3 objectors per median class size of 22,496). *See* Eisenberg & Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1546 (2004).

DWT 28981677v5 0090234-000016

The Telephone Consumer Protection Act ("TCPA") and Federal Communications Commission (FCC) regulations prohibit telemarketing robocalls without the prior express written consent of the called party. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3). Like other consumer protection statutes, Congress set up the TCPA so that its provisions could be enforced through a private right of action providing for the recovery of statutory damages, thus reducing the cost and scope of a regulatory enforcement mechanism. § 227(b)(3)(B) (providing recovery of $500 for each violation).

Plaintiff filed this action after receiving telemarketing robocalls advertising NorthStar's home security services, and he sought to represent a class of similarly situated individuals who received the same calls.   Plaintiff alleged that Yodel was directly liable for the calls, having physically placed the calls via its automated soundboard system, and NorthStar was vicariously liable for the calls because it hired Yodel to place the calls.

Class action litigation even for typical TCPA claims is difficult for a number of reasons.  First, the law on the merits, which is often informed by opinions and orders of the FCC,[3] is in a perpetual state of flux due to frequent FCC orders and clarifications of its regulations.  Indeed, during the course of these proceedings, both Yodel and NorthStar filed petitions with the FCC asking it to rule that the technology used to place the calls at issue is not regulated by the TCPA. *ECF Nos. 105, 198.*

Second, the technological focus of the TCPA's provisions often necessitate expert analysis of dialing systems and volumes of computer data, as Plaintiffs procured in this

---

[3] Congress vested the FCC with authority to prescribe regulations implementing the TCPA's requirements. 47 U.S.C. § 227(b)(2).

DWT 28981677v5 0090234-000016

case, to both establish the elements of their case and identify class members. *See Warnick v. DISH Network LLC*, 301 F.R.D. 551, 558 (D. Colo. 2014) (referring to "enormous burden . . . to produce and allow plaintiff's counsel and his experts to search through 600+ million calls and account records to try and find potential class members.")

Third, defendants in TCPA class actions are often successful in convincing the court that individual issues should preclude class certification. *See e.g., id.* Although the defendants' repeated attempts to do so in this case rightly failed (*ECF No. 57* – Opposition to Class Certification; *ECF No. 71* – Supplemental opposition to Class Certification; *ECF No. 86* – Order Denying Petition for Permission to Appeal; *ECF No. 170* – Motion for Reconsideration of Class Certification), the risk the Court would accept these arguments was substantial.

The unique facts of this case presented additional challenges. The defendants' use of soundboard technology, rather than traditional unattended prerecorded messages, raised a novel question. The Court's decision on summary judgment holding soundboard technology to be covered by TCPA is, to Plaintiff's knowledge, the first of its kind. Other courts have followed. *See Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 211399, 8-14 (N.D. Ill. December 9, 2019). In addition, NorthStar's use of a vendor, Yodel, to place the calls required an extensive analysis of communications between the co-defendants to resolve vicarious liability. *ECF No. 139* at 15-20.

The deteriorated financial condition of both defendants posed a final hurdle to resolution and a bankruptcy filing by Yodel. For its part, NorthStar's contentions as to its financial condition required, essentially, a new round of litigation with extensive

discovery, briefing, and hearings and consideration of yet another novel issue - whether due process depends upon its ability to pay a judgment imposed by aggregate statutory damages. *ECF No. 200.* Merits of the due process argument aside, NorthStar's financial condition placed a serious practical hurdle in the path to resolution of this matter – one that required a structured settlement with monthly payments by NorthStar to clear. In light of all these difficulties, the Settlement obtained is an excellent result for the class.

## III.     Settlement and Administration

The following summarizes the terms of the Settlement Agreement, which is attached hereto as Exhibit 3, and proceedings to date in the administration of the Settlement

### A.  Class Definition.

The Class is the same class that the Court certified in its October 15, 2018 order:

Class:
All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 20 or 50 to the call, and that resulted in the normal clearing disposition.

Subclass:
All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 50 to the call, and that resulted in the normal clearing disposition.

Excluded from the class are:
Any persons whose contact information is associated with either an IP address or website URL in the Red Dot Data marketing list.

*Agreement* at § 2.7.  There are currently 239,460 members of the class.[4]

### B. Structure of the Settlement Fund.

The Settlement requires NorthStar to pay one million eight hundred-fifty thousand dollars ($1,850,000) into the Fund according to the following schedule:  Six Hundred Thousand dollars ($600,000) by June 30, 2020; One Hundred Thousand dollars ($100,000) each by July 30, 2020, August 31, 2020, September 30, 2020, October 30, 2020, November 30, 2020, December 31, 2020, January 29, 2021, February 26, 2021, March 31, 2021, April 30, 2021, May 31, 2021, and June 30, 2021; and Fifty Thousand dollars ($50,000) by July 31, 2021. *Agreement* at § 2.38.  NorthStar has timely made its payments to date. *KCC Decl.* at ¶ 14.

The Settlement further requires structured disbursements from the Settlement Fund according to the following schedule:

a. Once the account contains funds sufficient to pay (1) Notice and Administration Costs and (2) Settlement Awards for all Approved Claims, the Claims Administrator shall within thirty (30) days pay Notice and Administration costs and send Settlement Awards to all class members who submitted an Approved Claim,

---

[4] Plaintiff's litigation expert's analysis of the call data and lead data produced by Yodel indicated that the Class was comprised of 239,630 persons, based on a count of the unique lead id numbers in the records meeting the class criteria. *ECF No.* 42-2 at p.11, ¶ 32.  In preparing the notice of class certification, the class administrator found that there were only 239,501 unique persons identified in the data, by count of name and address rather than lead id. *KCC Decl.* at ¶ 2.  After the notice of certification was sent, 32 people validly opted out of the class. *Id.* at ¶ 3.  And 9 more people validly opted out in response to the notice of settlement. *Id.* at ¶ 10.  Accordingly, there are 239,460 people currently in the class.

   b. Thereafter, once the account contains funds sufficient to pay Class Counsel any court approved expenses, the Claims Administrator shall within thirty (30) days pay Class Counsel their court approved expenses;

   c. Thereafter, once the account contains funds sufficient to pay Braver any court approved incentive award, the Claims Administrator shall within thirty (30) days pay Braver that court approved incentive award;

   d. Thereafter, the Claims Administrator shall pay Class Counsel any court approved attorneys' fees on a monthly basis until the Total Payment has been received;

   e. Thereafter, the Claims Administrator shall make any Second Distribution (see below)

   f. Thereafter, the Claims Administrator shall make any court approved *cy pres* payment (see below)

*Agreement* at § 2.33. Thus, payments will be distributed to the claiming class members as soon as there are sufficient funds to pay those claims and the costs of notice and administration. Class Members will not need to wait until the end of the payment schedule before receiving monetary relief.

 The Agreement also calls for a Second Distribution to the claimants in the event that uncashed checks leave money in the Settlement Fund, sufficient to pay at least ten dollars ($10) to each claimant who was not a person who failed to cash his or her initial Settlement Award check. *Agreement* at § 13.2

 Finally, if any monies remain in the settlement fund after any second distribution, those remaining funds will be paid to a *cy pres* as approved by the Court, instead of

reverting back to NorthStar. *Agreement* at § 13.3.  The Parties have their own respective proposals for the *cy pres* recipient, and have agreed to allow the Court to decide. *Ibid.* The parties have agreed to submit short supplemental briefs, not to exceed five pages, in support of their respective *cy pres* proposals.

### C.  Individual Payments.

Class Members who submitted valid claim forms will receive a *pro rata* share of the settlement fund after deduction of (i) any award of attorneys' fees and expenses to Class Counsel approved by the Court; (ii) any incentive award to Class Plaintiff approved by the Court; and (iii) all Notice and Administration Costs. *Agreement* at § 6.1.  Assuming the Court grants Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award (*ECF No. 255*), each claimant will receive approximately $182.00.[5]

### D.  Additional Relief.

As noted above, NorthStar agreed to the entry of an injunction in the Final Approval Order, permanently enjoining NorthStar from initiating any telephone call to any telephone line that delivers a prerecorded message and/or using soundboard technology to deliver a prerecorded message where the principal purpose of the telephone call is advertising or marketing NorthStar's products or services, unless the called party has provided prior express written consent to receive such calls.  Any telephone call

---

[5]This figure is calculated as follows:  $1,850,000 (settlement fund) - $129,407.02 (certification notice and administration) - $ 178,092.98 (settlement notice and administration) - $616,666 (attorneys' fees) -  $69,257.71 (expenses) - $20,000 (incentive award) = $836,669.27 / 4,588 (claimants) = $ 182.34 (payment). *KCC Decl.* at ¶ 13.

initiated by NorthStar in response to an alarm signal, life safety device signal, PERS signal, tamper signal, communication failure alert, or a telephone call initiated by NorthStar for the purpose of emergency verification or other similar purpose is excluded from this injunction. *Agreement* at § 6.3.

### E.   Release.

In exchange for the relief described above, the class members will release, as fully set forth in the Agreement, all claims that arise out of or relate in any way to the Released Parties' contact or attempt to contact Class Members by placing pre-recorded calls to the Class Members; phones, including, but not limited to, claims under or for a violation of the TCPA and any other statutory or common law claim arising under the TCPA as relative to pre-recorded or auto-dialed calls placed to telephones (collectively, the "Released Claims").  The Released Claims do not include claims asserted against Yodel and Yodel is not a Released Party.  *Agreement* at §§ 2.27, 2.28, 18.1.

### F.   Compensation for the Class Representative

The Settlement provides that Plaintiff may seek an incentive award from the Court to be paid from the Settlement Fund, but the Settlement is not conditioned on the Court's approval of that request. *Agreement* at § 7.3.  The notice of settlement advised the class that Plaintiff would seek an incentive award in the amount of $20,000 and no class member has objected. *KCC Decl.* at ex. A.  Following provision of notice, Plaintiff filed his formal request for an incentive award in the amount of $20,000 and, per the Court's order, a detailed declaration describing his efforts on behalf of the class in this case. *ECF No. 255*, *263*.  Support for the requested incentive award is set forth in these prior filings

9

and sufficient to satisfy the latest authority from the Tenth Circuit. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2018) ("The award should be proportional to the contribution of the Plaintiff.")  Class Counsel wish to reiterate their opinion, based on their substantial experience in class action litigation, that Mr. Braver's efforts on behalf of the class were exceptional and commendable. Sostrin Decl. at ¶ 16.  The requested incentive award is well justified.

### G.  Payment of Attorneys' Fees and Costs

The Settlement likewise provides that Plaintiff may move for an award of attorneys' fees and costs to be paid from the Settlement Fund, but again does not condition the Settlement on the Court's approval of that request.  *Agreement* at § 7.3.  Pursuant to the preliminary approval order, Class Counsel filed their motion for attorneys' fees in the amount of $616,666 and reasonable expenses in the amount of $69,257.71. *ECF No. 255*. The notice of settlement advised the class of the exact amount Plaintiff would seek attorneys' fees in the amount of $616,666 (one third of the fund) plus reasonable expenses. Not a single class member has objected. *KCC Decl.* at ex. A.  The requested award is fully supported Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award (*ECF No. 255*) and is discussed further below.

### H.  *Cy Pres* Distribution.

The Settlement also specifies what is to be done with residual monies that are left in the settlement fund as a result of uncashed checks. *Agreement* at § 6.2.  Rather than have that money return to NorthStar, the agreement provides that first, there shall be a second distribution to all claimants who did not fail to accept their initial payment,

provided there are sufficient funds for each such person to receive at least $10.00 (*id.* at § 13.2); and second, any residual monies left over after a second distribution, or because there were insufficient funds for a second distribution, shall be donated to a cy pres recipient, as approved by the Court. *Id.* at § 13.3.

The parties have their own respective proposals for the *cy pres* recipient, and have agreed to allow the Court to decide. *Ibid.* The Notice of Settlement informed the class of the parties' respective choices for *cy pres* recipients and no objections have been received. *KCC Decl.* at ex. C, p. 3. The parties have agreed to submit short supplemental briefs, not to exceed five pages, in support of their respective *cy pres* proposals.

## I.   Notice of Settlement and The Class's Response

Notice of the settlement was delivered to the class in accordance with the Court's preliminary approval order. *See ECF No. 254* at p.4, ¶ 10. The Settlement Administrator, KCC, which also mailed the original notice of class certification to the class last year, mailed the approved postcard notice of settlement to the class members' last known addresses on July 21, 2020. *KCC Decl.* at ¶ 4. For any notices returned as undeliverable, KCC utilized credit bureau and other public source databases to obtain updated addresses and promptly re-mailed the settlement notice to the new addresses it found. *Id.* at ¶ 5.

In accordance with the preliminary approval order, KCC also updated and maintained the class website at (http://www.nsalarmtcpaclass.com), which posted all relevant deadlines and information, allowed for the filing of claims online, and posted the full class notice, and copies of the Settlement Agreement, Preliminary Approval Order, and Plaintiffs' Motion for Attorney's Fees, Costs, and Incentive Award. *Id.* at ¶ 7. KCC

11

also maintained a toll free number that class members could call to obtain information about the settlement and file claims telephonically. *Id.* at ¶ 8.

In order to provide the best notice practicable, the parties also agreed to provide additional notice to the class via social media advertisements. KCC conducted a custom audience match advertising campaign on both Facebook and Instagram, targeted at users of those platforms that were associated with a telephone number in the class list. *KCC Decl.* at ¶ 6. Users who clicked those ads were taken to the settlement website. *Ibid.*[6]

The response from the class was positive. No class member has objected and only 9 class members have requested exclusion in response to the notice of settlement. *Id.* at ¶¶ 10-11.[7] To date, 4,588 valid claims have been filed. *Id.* at ¶ 9.[8] The claim rate is lower than expected, but this does not detract from the settlement. As the 8th Circuit held in *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017), a low claim rate "does not suggest unfairness." *Id.*, citing *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 377-78, 1384 (S.D. Fla. 2007) (approving settlement where 118,663 out of approximately 10.3 million class members submitted claims, for a claim rate of approximately 1.2 percent). As the *Keil* court put it:

> "even if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ('Their right to share the harvest of the lawsuit upon proof of their identity, whether or

---

[6] The parties decided to implement this additional notice because the claim rate was lower than expected. The cost of the social media advertisements was only $17,000. *KCC. Decl.* at ¶ 13.

[7] Prior to settlement, there were 32 requests for exclusion received in response to the certification notice. *Id.* at ¶ 3.

[8] This includes 85 late-filed, but otherwise valid, claims that the parties have agreed to accept, subject to the Court's approval. See below.

12

> not they exercise it, is a benefit in the fund created by the
> efforts of the class representatives and their counsel.'). Further
> . . . they will benefit from the additional injunctive relief that
> the settlement provides. S*ee Bezdek v. Vibram USA, Inc.*, 809
> F.3d 78, 84 (1st Cir. 2015) ('The district court did not abuse its
> discretion in concluding that injunctive relief against
> continuation of the allegedly false advertising was a valuable
> contribution to this settlement agreement.)"

*Keil*, 862 F.3d at 697.  In addition, the claim rate is well in line with other classwide TCPA

settlements. *See Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9

(M.D. La. May 23, 2013) (finally approving TCPA Settlement and finding claim rate of

"less than one percent" to be "consistent with other TCPA class action settlements"); *Lee

v. Global Tel*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, 21 (C.D. Cal. September 24,

2018) (finally approving TCPA class settlement with a claim rate of 1.8%); *Bayat v. Bank

of the West*, 2015 U.S. Dist. LEXIS 50416, *15 (N.D. Cal. 2015) (granting final approval

in TCPA action after noting 1.9% claim rate for monetary relief); *Arthur v. SLM Corp.*,

No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of

approximately 2%); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (final

approval where claim rate was 2.5%).

In light of the lower than expected claim rate, the parties have agreed, subject to

the Court's approval, to accept valid, but late-filed claims, up to the date of final approval.

Sostrin Decl. at ¶¶ 17-18.  Of the 4,588 claims filed as of the date of this filing, 85 are late

filed. *KCC Decl.* at ¶ 9.  Excluding the late-filed claims would raise the expected payment

to each claimant only slightly - $185 rather than $182 (*KCC Decl.* at ¶ 12), which is still

more than the amount the notice advised was likely.

## IV.    Final Approval is Warranted

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of class action litigation. *See Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies.") The Court "must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.3d 322, 324 (10th Cir. 1984).  In assessing whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).  Prior to the current iteration of Rule 23(e), the Tenth Circuit set forth similar factors for the Court's consideration:  "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  All but the last of these factors is subsumed in Rule 23 - "the judgment of the

14

parties that the settlement is fair and reasonable." *Id.* Here, the proposed Settlement easily meets each factor.

### a. The Class Was Adequately Represented

Both the class representative, Mr. Braver, and class counsel have adequately represented the class. Indeed, the Court already found this to be the case when it certified the class. *ECF No. 72* at pp. 15-16.

For his part, Mr. Braver has provided exemplary service to the class. Early in the case, he rejected a substantial offer for individual settlement that would have benefited him financially, but left the class without representation. *ECF No.* 263 (Braver Decl.) at p. 4. He read every significant pleading and motion filed in the case, regularly communicated with counsel, attended mediation and was directly involved in additional settlement negotiations for the class, produced written discovery without issue, performed well at his deposition, gave helpful testimony to the court in the class certification hearing, and attended other hearings even when his presence was not required. *Id.* at pp. 4-7. Mr. Braver's efforts on behalf of the class were adequate. *ECF No. 72* at p. 16 "Braver is a fair and adequate representative for the proposed class.")

Class Counsel have also adequately represented the class through years of hard fought litigation. As the Court has already found, Class Counsel "are experienced litigators in civil cases, including in class actions." *Id.* at p. 15. In this case, Class Counsel defeated numerous attempts by the defendants to kill the case and secured numerous rulings in favor of the class: they defeated a motion to dismiss (*ECF No.* 24); they worked with an expert witness to analyze millions of rows of data (*ECF No.* 42-2); they won a

15

contested motion for class certification after evidentiary hearing (*ECF No.* 72); they defeated an attempt at interlocutory appeal of class certification (*ECF No.* 86); they defeated two motions to stay the case pending rulings from the FCC on each of the defendants' FCC petitions (*ECF No.* 105, 198); they filed oppositions to those petitions in the FCC proceedings and personally met with FCC staff to explain their opposition (*ECF No.* 255-3, p. 6 ¶ 19); they defeated a motion for summary judgment and secured a victory on their own motion for summary judgment on behalf of the class (*ECF No.* 139); they defeated motions to decertify the class and reconsider summary judgment (*ECF No.* 199); when NorthStar raised its financial condition as a defense, they secured expert analysis and testimony concerning NorthStar's finances (*ECF No.* 199); and rather than push both defendants into bankruptcy and leave the class with no relief whatsoever, they secured financial and equitable relief for the class through this Settlement. Class Counsel adequately represented the class.

### b. The Settlement Was Negotiated at Arm's Length

"Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). In this case, Settlement was not reached until discovery was completed, a class was certified over NorthStar's opposition, and the Court had entered summary judgment for the class on liability. The only remaining issues were the appropriate amount of damages and NorthStar's practical ability to pay, a serious hurdle to obtaining a benefit for the class. Moreover, settlement was only reached after multiple mediations and negotiations.

On February 26, 2019, the parties conducted a full-day mediation before Judge Morton Denlow (Ret.) in Chicago, Illinois, which failed to result in a settlement. *Sostrin Decl.* at ¶ 7. On December 12, 2019, the Parties conducted a second, full-day mediation, this time before James P. McCann in Tulsa, OK, which again did not result in a settlement. *Id.* at ¶ 8. Both mediations were highly adversarial, non-collusive, and conducted at arm's length. *Id.* at ¶ 9. Prior to each mediation, the Parties submitted detailed mediation briefs setting forth their respective views on the strengths of their cases. *Ibid.* And during mediation, the Parties set forth their relative views of the law and the facts and exchanged counterproposals on the relief to be provided to the class and other key aspects of the settlement. *Ibid*.

The parties also met in person to continue their settlement negotiations immediately following the March 9, 2020 hearing on NorthStar's motion to reduce damages, and continued their negotiations remotely before reaching the Agreement. *Id.* at ¶ 10. At no point during any negotiations did the parties' negotiate the amount of any attorneys' fees or incentive payment that should be awarded, but instead agreed to leave that to the Court's discretion. *Id.* at ¶ 11.

Thus, the settlement was based upon the extensive information obtained in discovery, expert analysis, the assistance of multiple mediators, and an in depth inquiry and expert analysis of NorthStar's finances, which were presented to the court in an evidentiary hearing on NorthStar's ability to pay.

### c. The Relief Provided for the Class is Adequate

DWT 28981677v5 0090234-000016

The relief provided to the class under the Settlement is also adequate.  Analysis of this factor requires the court to consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2).

The Settlement provides for NorthStar's payment of $1,850,000 into a common fund for the benefit of the class, which amounts to approximately $7.73 per class member. *Agreement* at § 6.1.  In addition, the settlement provides for meaningful injunctive relief limiting NorthStar's use of soundboard technology, which will remain in place even if the FCC at some point rules that the technology is not regulated by the TCPA. *Agreement* at § 6.3.

The per class member result exceeds many finally approved TCPA class settlements obtained against large corporations, and thus reflects a good result for the class even if the realities of NorthStar's financial condition were ignored. *See e.g., Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (finally approving settlement amounting to $4.31 per class member); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 at 4, 21 (N.D. Cal. Mar. 31, 2014) (finally approving settlement amounting to $1.09 per class member); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1046 (S.D. Cal. 2015) (finally approving settlement amounting to $2.13 per class member); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, 7-9 (N.D. Ill. 2016) (finally approving settlement amounting

to $3.83 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731, 5, 19 (S.D. Cal. Feb. 5, 2013) (approving settlement amounting to $2.90 per class member; final approval granted at Dkt. No. 91).

The positive response from the class also supports the adequacy of the relief provided. Not a single class member objected to the settlement and only 9 class members chose to opt out of the settlement. The lack of opposition supports final approval. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1200 (7th 1996) (affirming final approval of settlement where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735, 21 (N.D. Ill. Dec. 6, 2013) (the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

### 1.  The Costs, Risks, and Delay of Trial and Appeal

In this case, NorthStar's practical ability to pay was the predominating factor in the amount of the settlement obtained.  Extensive discovery, expert analysis, and an evidentiary hearing on NorthStar's financial condition established that NorthStar was incapable of paying a multimillion dollar judgment.  In situations such as these, courts have certified TCPA settlements providing far less relief to the class than the results obtained here. *See .g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (finally approving settlement amounting to just 26 cents per class member due to financial difficulties of the defendant; class size shown at Doc. 137).

The value of the recovery obtained for the class far outweighs the value of an uncollectable judgment, a likely prospect given the circumstances. Accordingly, the risk of proceeding in lieu of settlement strongly favor approval of the settlement.

### 2. The Settlement Provides for Effective Distribution of Relief

The Settlement also provides for an effective method of processing claims and distributing relief to the class. "A claims process should be as simple, straightforward, and nonburdensome as possible." *In re Samsung Top-Load Washing Mach. Mktg.*, 2020 U.S. Dist. LEXIS 90759, 57 (W.D. Okla. May 22, 2020). The claims process in this case easily satisfies this standard. The class members could file a claim at the settlement website, over the phone, or by mail and the notice plainly explained how to do so. *KCC Decl.* at Ex. A, Ex. C. The claim form was also simple and straightforward - it did not require the class members to submit any documentation whatsoever, but instead required them to submit only their signature, contact information, and either a claim id (on the notice) or telephone number in the class list. *ECF No. 252-1* at 38. The claims process was thus far simpler than others granted final approval in this district. *In re Samsung Top-Load Washing Mach. Mktg.*, 2020 U.S. Dist. LEXIS 90759 at 58-59 (requiring certain class members to submit photographs).

The settlement also provides for distribution of relief as efficiently as possible. Payments will be sent as soon as the settlement account contains sufficient funds to pay (1) Notice and Administration Costs and (2) Settlement Awards for all Approved Claims. *Agreement* at § 2.33. Class members need not wait until the account is fully funded to receive their payments.

### 3. The Proposed Fee Award, and timing of Payment, Support Approval

Class Counsel has requested attorneys' fees in an amount equal to one-third of the common fund - $616,666, and have supported that request by separate filing. *ECF No. 255.* The requested fee of one third of the fund is the customary fee in common fund cases in the Tenth Circuit, and therefore supports a finding that the settlement is fair, reasonable, and adequate. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Blanco v. Xtreme Drilling & Coil Servs.*, 2020 U.S. Dist. LEXIS 126155, *14 (D. Colo. July 17, 2020); *Basin Oil & Gas Lease Antitrust Litig.*, 2019 U.S. Dist. Lexis 75384, 9 (W.D. Okla. April 25, 2019). The fact that no class member has objected to the requested fee award strongly supports the propriety of the requested fee. *See Cox v. Sprint Commc'ns Co. L.P.*, 2012 U.S. Dist. LEXIS 162576, 13 (D. Kan. Nov. 14, 2012) ("The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

Moreover, as explained more fully in Plaintiff's fee petition (*ECF No. 255*) the requested fee is well justified by Class Counsel's experience, by the extensive and lengthy litigation history in this difficult case, by Class Counsel's success on the merits, by the contingent nature of the fee and the substantial risk that Class Counsel took of obtaining no-recovery, and by awards in similar cases. *Id.*

Finally, the proposed timing of the fee award also supports final approval. Class Counsel negotiated the agreement such that their fees would be paid last. *Agreement* at § 2.33. Only if there is a second distribution of residual funds to the class members, or a cy

pres award of residual funds, will any funds be disbursed after payment of attorneys' fees to Class Counsel. *Ibid.*

### 4. There are No Rule 23(e)(3) Agreements

Rule 23(e)(3) requires settling parties to identify any agreements made in connection with the settlement, such as those made to resolve objector's claims.  There were no such agreements made in connection with this case, as indeed there were no objectors to the settlement. *Sostrin Decl.* at ¶ 15; *Blynn Decl.* at ex. 2, p. 3.  This factor accordingly supports final approval as well.

### d. The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement also treats class members equitably relative to each other.  Every valid claim filed entitles the claimant to receive the exact same *pro rata* share of the fund as every other claimant.  And while Mr. Braver has sought an incentive award for his service of class representative, properly supported incentive awards do not render class settlements "inequitable" under this factor. *See O'Dowd v. Anthem, Inc.*, 2019 U.S. Dist. LEXIS 153610, 43 (D. Colo. September 9, 2019) (finding that settlement treated class members equitably relative to each other despite approval of incentive award); *Ferrell v. Buckingham Prop. Mgmt.*, 2020 U.S. Dist. LEXIS 9919, 69-71 (E.D. Cal. January 17, 2020) (discussing incentive award in the context of Rule 23(e)(2)(D)'s requirement for consideration of this factor).

### e. The Parties Support the Settlement as Fair and Reasonable

Finally, both the class representative and class counsel believe that the settlement

is fair, reasonable, and adequate. *See Sostrin Decl.* at ¶¶ 12-14; *ECF No. 263* (Braver Decl. at ¶3-4) (noting obligation in "obtaining a result that Defendants could actually pay with recovery to the class and not result in shutting the businesses down.")  NorthStar also supports Final Approval.  It agreed to the terms of the settlement and approved the Final Approval Order and judgment attached hereto as Exhibits 1 and 2.

Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation, particularly in similar TCPA class action cases (*Sostrin Decl.* at ¶¶ 3-5); (2) Class Counsel exhaustively litigated the claims through summary judgment and are well acquainted with the risks of proceeding without settlement; and (3) Class Counsel secured expert analysis of NorthStar's financial condition and ability to pay. *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

## V.    The Presence of a Governmental Participant

No governmental entity is a party to this action.  However, in compliance with the notice provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, within ten days after filing of the Settlement Agreement in this Court, notice of the Settlement was provided to the United States Attorney General, the Attorneys General in all fifty states, as well as the Attorneys General of the five recognized U.S. Territories.  *See Blynn Decl.* at ¶¶ 5-6.

"Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to class action settlement, CAFA presumes that, once put on notice, either state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Auto Ins. Co.*, 2010 WL 1687832, *14 (N.D. Cal. April 22, 2010).  No governmental entity objected to the Settlement, which further supports final approval of the settlement.

**VI.    Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Proposed Settlement and enter the Settlement Order and Judgment attached hereto as Exhibits 1 and 2.

Respectfully submitted,

By:   /s/ Timothy J. Sostrin
Keith J. Keogh, IL #6257811, *Pro Hac Vice*
Timothy J. Sostrin, IL #6290807, *Pro Hac Vice*
KEOGH LAW LTD
55 W Monroe St, Ste 3390
Chicago, IL  60603
(312) 726-1092 / (312) 726-1093 –fax
keith@keoghlaw.com
tsostrin@keoghlaw.com

David Humphreys, OBA #12346
Luke Wallace, OBA #16070
Paul Catalano, OBA #22097
HUMPHREYS WALLACE HUMPHREYS, P.C.
9202 S. Toledo Avenue
Tulsa, OK  74137
(918) 747-5300 / (918) 747-5311 (Fax)
david@hwh-law.com
luke@hwh-law.com

paul@hwh-law.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2020, I caused the foregoing document to be electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Brian R. Matula                                     brmatula@gpmlegal.net
GUM PUCKETT MACKECHNIE COFFIN & MATULA, LLP


Daniel S. Blynn                                     dsblynn@Venable.com
Stephen R. Freeland                            srfreeland@Venable.com
Elizabeth C. Rinehart                          lcrinehart@venable.com
VENABLE, LLP
*Attorneys for Defendant NorthStar Alarm Services, LLC*